## HUDSON *v.* MARYLAND STATE HOUSING COMPANY

[No. 102, October Term, 1954.]

*Decided May 19, 1955.*

*Motion for rehearing filed June 14, 1955, denied June 21, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Stanley Sollins,* with whom was *Sidney Kaplan* on the brief, for the appellant.

No brief and no appearance for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

This case arises under the Land Instalment Contract Law as enacted by Chapter 596 of the Acts of 1951, which is codified as Sections 118-124 of Article 21 of the 1951 Code. The appellee, The Maryland State Housing Company, a real estate corporation organized under the laws of Maryland (usually referred to below as the "Housing Company" or the "vendor"), instituted foreclosure proceedings, in accordance with the above statute, in the Circuit Court No. 2 of Baltimore City against the appellant, Richard I. Hudson (usually referred to below as "Hudson" or the "vendee") for the sale of the premises known as No. 2867 West Lanvale Street in that City. The appellant filed a combined answer to the petition for foreclosure and petition of his own for an injunction to prevent the sale and for the rescission of the land instalment contract dated January 10, 1953, upon which the foreclosure suit was based. After a hearing, the Chancellor filed an order which denied the appellant's petition for an injunction and for rescission and which authorized the trustee in the foreclosure suit to proceed with the sale. The appeal is from that order.

The record transmitted to this Court shows that the property has been sold, that the Housing Company purchased it, and that after the order to appeal had been filed, the sale was ratified. No bond to stay the operation of the decree of foreclosure was filed. Since the real objective sought by the appellant is the rescission of his contract and the recovery of all amounts paid by him thereunder, any further consideration of the sale would raise questions which are only of academic interest. Cf. *Sawyer v. Novak*, 206 Md. 80, 110 A. 2d 517.

The facts may be briefly summarized as follows:

(1) Hudson, as vendee, entered into two instalment contracts with the Housing Company, as vendor, for the purchase and sale of the Lanvale Street property. Each contract was subject to the Land Instalment Con-

tract Law. The first was dated April 10, 1952; the second, January 10, 1953. No copy of the first contract was delivered to Hudson; a copy of the second contract was duly delivered to him. The first contract did not state as fully as the Land Instalment Contract Law calls for information with regard to insurance on the property. There is a similar defect in the January, 1953 contract. Under each contract the purchase price of the property was $5,995, and payments were to be at the rate of $20.00 per week. The January, 1953 contract recited that the buyer had paid $454.10 prior to the signing of the contract; the evidence showed that Hudson had paid the Housing Company a total of $980.00, including payments of $200.00 made at or before signing the April, 1952 contract, and there is no explanation of this discrepancy in figures. Other terms of the new contract were apparently substantially the same as the old, including those pertaining to financing through a mortgage and the creation of a ground rent.

(2) Hudson began to fall behind in his payments in March, 1954, and though he made a number of payments thereafter, he was $40 in arrears on June 24th. As a result, the Housing Company sent him a notice of forfeiture in accordance with the Land Instalment Contract Act. Hudson made no more payments and decided to give the property up because he could not obtain a building and loan association mortgage loan and because the property was not large enough for his family. Negotiations ensued under which Hudson was to move out and was to surrender all claims against the Housing Company and the Housing Company was to pay him $50 and to surrender any right which it might have to obtain a deficiency judgment against Hudson. Mutual releases were to be executed and delivered. Hudson did execute such a release; the Housing Company did not, apparently because Hudson had not vacated the premises. The proposed settlement was abandoned, and at about the same time the Housing Company instituted these foreclosure proceedings and Hud-

son demanded rescission of the contract and the repayment of all sums paid by him to the appellee, which by then aggregated some $2,380.

On four occasions the Housing Company instituted ejectment proceedings in the People's Court against Hudson (once in the name of some other, but seemingly related, company), and at least once Hudson paid the costs of such a suit. None of them was carried through. Ejectment is not a permissible remedy under the Land Instalment Contract Law.

The trial court held that the second contract superseded the first, that any defects in the first were therefore immaterial and that any defect in the statement relating to insurance in the second contract was either not material or was waived by Hudson.

In current legal terminology some authorities apply the term "merger" or "substituted contract" rather than "novation" to the substitution of a new agreement for an old one between the same parties, and reserve the term "novation" for a new agreement in which one or more new parties are introduced. *Restatement, Contracts*, Sections 424, 443; *Williston, Contracts*, Rev. Ed., Section 1865. The latter points out, however, that the term "novation" is not uncommonly applied in the common law, as well as in the civil law, to a substituted contract between the same parties. In this State the term "novation" has been applied to a new contract between the parties as well as to a new contract involving one or more new parties. In *Baltimore Academy of the Visitation v. Schapiro,* 169 Md. 332, 181 A. 731, it is stated that "A novation may occur by a change of parties to the contract, by the change of the subject matter, by the change of the terms and conditions." Likewise, in *District National Bank of Wash. v. Mordecai,* 133 Md. 419, 105 A. 586, this Court said: "A novation may be made by the substitution of a new obligation or contract between the same parties, with the intent to extinguish the old obligation or contract, but it does not result from the substitution of one paper writing for another, or

one evidence of debt for another, or one contract for another, unless such substitution is made with the intention of all parties concerned to extinguish the old one."

The trial judge found that "the vendee voluntarily, willingly and knowingly entered into this contract in January, 1953. He knew what he was doing and he understood it * * *." The trial judge saw and heard the witnesses; he expressed the view that the vendee was "an intelligent person." There is nothing in the record which has been called to our attention or which we have found which would justify our declining to accept these findings. There was testimony to the effect that all details of the January, 1953 contract were explained to the vendee before he signed it.

We think that the evidence warranted the trial court's finding that the January, 1953 contract was intended by the parties to be substituted for, and to supersede, the contract of April 10, 1952. If we assume (without, however, so deciding) that in January, 1953, the vendee had the right to rescind the contract of April 10, 1952, we find no serious difficulty with the new contract for this reason. Under Code (1951), Article 21, Section 119 (2), the failure of the vendor to furnish the vendee with a copy of the contract signed by the vendor within fifteen days after notice that the vendee has signed renders the contract *voidable* at the option of the vendee, but *not void;* and under the next numbered paragraph of the same Section until "the vendee signs a land instalment contract and receives a copy of it, signed by the vendor the vendee has an unconditional right to cancel the contract and to receive immediate refund of all payments and deposits made on account of or in contemplation of the contract" and a "request for such refund shall operate to cancel the contract * * *." This again shows the agreement to be voidable, but not void. *Williston* on *Contracts,* Rev. Ed., Section 1872, states that "it is not essential that the original obligation discharged by the subsequent novation shall have been valid in every sense of the word. It is * * * clearly possible in a novation

of the debtor, for a new debtor to promise absolutely to pay money in consideration of the creditor's surrender of his old claim, whether the claim was well founded or not, so long as it was not wholly frivolous and unreasonable." We think the same principle is applicable in cases of what may now be termed "merger."

One essential of a novation or merger is that the new contract must be valid. *District National Bank of Wash. v. Mordecai, supra,* which states the requirements of a novation; *Williston, op. cit.,* Section 1872. The appellant asserts that the agreement of January 10, 1953, is invalid and sets up some five grounds in support of its claims to this effect.

The first is the failure of the vendor to deliver to the vendee a signed copy of the agreement of April 10, 1952, within the time prescribed by Section 119 (2) of Article 21 of the Code. Since we think that the Chancellor's finding that the new agreement of January 10, 1953, was intended to supersede and did supersede the agreement of April 10, 1952, is sustained by the evidence, we agree with his view that the first agreement ceased to be of any further effect, and this contention necessarily fails.

Another objection is the alleged failure of the vendor to furnish the vendee with a receipt in the form prescribed by Section 119 (4) of Article 21 of the Code for his deposit of $200 made under the first contract. This fails for the same reason as the first objection, above stated.

The objection asserted in the appellant's brief based upon the failure of the vendor upon request of the vendee to furnish the latter with a statement under Section 122 pertaining to the $980 paid by the vendee to the vendor seems to relate to several different times, all, or all but one, of which were subsequent to the execution of the contract of January 10, 1953. There is no provision in the statute which undertakes to invalidate the contract because of such a subsequent violation of its requirements. If the date of January 10, 1953, is intended to

be dealt with separately, the appellant's own testimony shows that he did not request such a statement at that time.

A further asserted objection to the validity of the contract is the use by the vendor of ejectment proceedings, which are not a permissible remedy under the statute. Again, there is nothing in the statute which undertakes to invalidate the contract for such a cause.

The other of the five objections, and the one most earnestly pressed, is that the statement in the contract with regard to insurance is not so complete as it should have been. There was insurance against fire and other hazards and its cost was stated to be $11 per year, and both vendor and vendee were covered. The actual cost was $11.55 per year. The vendee knew that there was insurance. Information as to the amount and expiration date, the type of coverage and the party or parties to whom it was payable was not given, despite the requirements of Section 120(c). On this matter, the learned Chancellor said (in part) :

> "Whatever you might say about the right of vendee to terminate the contract very shortly after it is made because of failure to include all of the terms with respect to insurance that I have mentioned and which as I have said this contract does not include, I certainly can't reach the conclusion that the vendee can from January, 1953 until this case is brought into court in August, 1954, knowing of the situation as he did and he is an educated person, he is a competent person, at least that is the opinion I formed of him when he was on the stand, I certainly can't reach the conclusion that he can wait all that time with full knowledge of that situation with respect to insurance, make no inquiry about it, unconcerned about it, that he can then when foreclosure proceedings are brought, then come in and for the first time say the contract is void because it doesn't fully

> comply wtih the provision of the act with respect
> to insurance. I think a person can waive such
> a requirement as this and I find that he either
> has waived or that it is not a material matter
> in view of the great lapse of the time and the
> fact that it had no effect on the vendee at
> all * * *"

We agree with him that the appellant could and did waive whatever rights may have accrued to him by reason of the deficiencies of the contract in the information therein contained with regard to insurance. The willingness of the appellant to terminate the contract and to release all claims thereunder for a consideration of $50 is not without significance in indicating that he was satisfied with the information which was furnished him as to insurance and that he attached no importance to any deficiencies in it. He received the benefit of the use and occupancy of the house for about a year and a half after the execution of the contract of January 10, 1953, and we think that he is now estopped to repudiate the contract and recover all of his payments and thus have the house rent-free for the period of his occupancy, whatever his rights might have been at any earlier stage. That is a question with which we are not now confronted, nor do we find it necessary to decide whether the deficiencies of the terms of the contract with regard to insurance are material.

We may add that once again the statute does not impose the penalty of making the contract either void or voidable for failure to comply fully with the terms of Section 122. The contrast between the provisions of Section 122 and those of Section 119 (2) and (3) which make failure to furnish a copy of the contract a ground upon which the vendee may avoid the contract and recover any amounts already paid is too marked to be supposed to be accidental.

Nor does the effort of the appellant to import into the Land Instalment Contracts Law the provisions of the Retail Instalment Sales Act (Code (1951)), (Article

83, Sections 116-140) seem to us to have any more, if as much, support. Both statutes are undoubtedly remedial in character and undoubtedly are intended to curb serious actual or potential evils. But the differences between the two statutes are very marked. Suffice it to say that where Section 119 (2) of the Land Instalment Contracts Law make such contracts *voidable* for failure to furnish signed copies, the corresponding provision of the Retail Instalment Sales Act (Section 116 (b)) makes contracts subject to its provisions *absolutely void, Stride v. Martin,* 184 Md. 446, 41 A. 2d 489; and the Retail Instalment Sales Act (by Section 137) carries criminal penalties for violations thereof, whereas the Land Instalment Contracts Law contains no penal provisions whatever. Still more significant is the absence from the Land Instalment Contracts Law of any provision comparable to Section 135 of the Retail Instalment Sales Act which reads as follows:

"Sec. 135 (Waivers by Buyer.) No act, agreement or statement of any buyer in any instalment agreement, shall constitute a valid waiver of any benefit or protection under the provisions of this sub-title."

Nothing in this opinion is intended to preclude any rights to an accounting to which the vendee may be entitled against the vendor.

In accordance with the views above expressed, the order of the Circuit Court No. 2 will be affirmed.

*Order affirmed, with costs.*