SPRUELL *v*. BLYTHE ET UX.

[No. 156, September Term, 1957.]

*Decided December 18, 1957.*

The cause was argued before Brune, C. J., and Collins, Henderson, Hammond and Prescott, JJ.

*Eugene Hettleman,* for appellant.

*J. Mayer Willen,* for appellee.

Prescott, J., delivered the opinion of the Court.

Mayolla Spruell, the appellant, filed suit in the Circuit Court of Baltimore City. She had purchased from the appellees a house and lot situated in Baltimore under what may be considered as an oral contract. The terms thereof were such as to bring the agreement within the provisions of the Land Instalment Contract Act. She prayed a return of all money paid by her for the purchase of said property, and that said property be impressed with a lien for all sums due her. The chancellor dismissed her bill of complaint, and she has appealed.

The contract was entered into on October 26, 1954, and provided for the purchase by the appellant from the appellees of the property known as 2235 W. Fayette Street for the sum of $6,500, subject to a ground rent of $90, to be created. The contract was oral, except for "just a little piece of paper that was written" which was not introduced into evidence. She paid a deposit of $50 on that day, for which she received a written receipt, and an additional deposit of $50 on November 3, 1954. She occupied the property from November 5, 1954, until April 27, 1956, and paid unto the sellers a total of $1,504.25, in weekly instalments according to the contract. There was never any written contract such as required by Art. 21, sec. 119 of the Code (1951). She testified she was supposed to get a deed when she had paid "$500 in." When she had done that, the sellers demanded $250 more; and, when she had paid that sum they demanded $250 more, and "on and on like that." She also testified that on March 16, 1956, when she came into the office of the attorney for the appellees, he stated he wanted an additional $650 to put through a settlement and give her a deed.

The appellant consulted two attorneys during the time of her occupancy of the property, and negotiations between the parties continued during the time of her occupancy, until broken off by the final demand for an additional $650. She then vacated the property, consulted her present attorney, and promptly filed the present suit. It is admitted that the reasonable rental value of the property during the period of her occupancy would equal the amount she has paid the sellers; nevertheless, the appellant claims the return of all money paid by her, without any deduction for occupancy, based upon the provisions of the Land Instalment Contract Act.

The pertinent section of said Act, Art. 21, Secs. 118 to 124, Code (1951), reads as follows:

> "119. (Form and Delivery of Land Instalment Contracts.) (1) Every land instalment contract shall be evidenced by an instrument in writing signed by all of the parties thereto containing all of the terms to which they have agreed.

"(2) At or before the time the vendee signs the instrument, the vendor shall deliver to him an exact copy of it and the vendee shall give the vendor a receipt showing that he has received the copy of the instrument. If such copy was not executed by the vendor, then unless the vendor within fifteen (15) days after notice that the vendee has signed, delivers to him a copy of the instrument signed by the vendor, the agreement and the instruments signed by the vendee shall be voidable at the option of the vendee and the vendor shall immediately upon demand refund to the vendee all payments and deposits theretofore made. * * *

"(3) Until the vendee signs a land instalment contract and receives a copy of it, *signed* by the vendor the vendee has an *unconditional* right to cancel the contract and to receive immediate refund of *all* payments and deposits made on account of or in contemplation of the contract. A request. for such refund shall operate to cancel the contract; or

"(4) When any such payment or deposit is accepted by the vendor from a vendee, the vendor shall immediately deliver to him a receipt therefor, which clearly states in 12-point type or larger, in typewriting or in legible handwriting his rights under paragraph (3) above." (Emphasis supplied.)

The appellees concede, and the evidence discloses, that there was no compliance with section 119. The chancellor, however, concluded that the appellant had waived the provisions of sub-section (3), thereof, the sub-section that is determinative of this appeal, and by her conduct had become estopped to avail herself of the advantages reserved in said sub-section for vendees. Ordinarily a party to a contract may waive any of its provisions that are for his benefit. But, when a statute contains provisions that are founded upon public policy, those to whom it applies are not permitted to waive such provisions. *Stewart v. Gorter,* 70 Md. 242, 245, 16 A. 644; *Heim v. American Alliance Ins. Co.* (Minn.), 180 N. W.

225, 226; 6 *Corbin, Contracts,* sec. 1515; *Pope M'f'g Company v. Gormully,* 144 U. S. 224, 234, 235. In *Brooklyn Bank v. O'Neil,* 324 U. S. 697, 704, the Supreme Court, in recognizing this principle again, said:

> "Where a private right is granted in the public interest to effectuate a legislative policy, waiver of a right so charged or colored with the public interest will not be allowed where it would thwart the legislative policy which it was designed to effectuate."

It therefore becomes necessary that we determine whether the provisions of sub-section (3) were made solely for the benefit of vendees, or were they based upon the public policy of this State. 3 *Sutherland, Statutory Construction,* (3rd Ed.), sec. 5901 says:

> "In its strict sense public policy reflects the trends and commands of the federal and state constitutions, statutes and judicial decisions. In its broad sense public policy may be traced to the current public sentiment towards public morals, public health, public welfare, and the requirements of modern economic, social and political conditions."

See also, *Md. Trust Co. v. Mechanics Bank,* 102 Md. 608, 632, 63 A. 70; *Public Policy in the English Common Law,* 42 Harv. L. Rev. 76. In 6 *Corbin, Contracts* at page 458 the author states that "In determining what public policy requires, there is no limit whatever to the 'sources' to which the court is permitted to go; * * *."

It is a matter of common knowledge that at the time of the enactment of the Land Instalment Contract Law in 1951 there were certain governmental controls with reference to landlords, when they leased their properties as dwellings. Not infrequently, instalment purchase contracts were entered into, which required nothing, or a very small amount, as the downpayment, but called for rather substantial weekly or monthly payments, when the individual properties were considered. Many times, these contracts effectuated an evasion of one or more of the governmental controls relative to landlords; and

the "purchaser" under the contract, after making many weekly or monthly payments, arrived at the conclusion, because of the amount of the purchase price, interest being paid, or other charges that he would be in a better position if he treated himself as a "lessee" and terminated the contract. This, in effect, made the purchasers lessees, and the sellers landlords who were not subject to the governmental controls. As was stated by Chief Judge Brune, in *Hudson v. Md. State Housing Co.*, 207 Md. 320, 331, 114 A. 2d 421, the Land Instalment Contract Law was "intended to curb serious actual or potential evils." We hold that the enactment of section 119 (3) was a declaration of public policy of this State, and its provisions cannot be waived. It is analogous to the usury and bankruptcy laws, most, if not all, of which cannot be waived, because they are based on public policy. If the provisions of sub-section (3) could be waived, the legislation is meaningless, as a short paragraph waiving the same could, and probably would, be inserted in every future contract of this nature.

In making this ruling, we are not unmindful of the fact that in the *Hudson* case, *supra*, this Court held that the provisions of section 120 (c) relating to insurance could be waived, and a failure to comply fully with the provisions of section 122 did not, by the terms of said section, render the contract either void or voidable. However, the Court, speaking through Chief Judge Brune, was careful to note:

> "We may add that once again the statute does not impose the penalty of making the contract either void or voidable for failure to comply fully with the terms of Section 122. The contrast between the provisions of Section 122 and those of Section 119 (2) and (3) which make failure to furnish a copy of the contract a ground upon which the vendee may avoid the contract and recover any amounts already paid is too marked to be supposed to be accidental."

A most casual reading of the Act will disclose the difference between sections 120, 122 and 119. In sections 120 and 122 there is no specific provision that makes a failure to comply

with their terms sufficient reason to render the contract voidable; nor is there any provision that states what the rights of the vendee are for failure to comply therewith. On the other hand, section 119 (3) states, without qualification, that a failure to comply with it renders the contract voidable at the pleasure of the vendee, and further states what his rights are upon his cancellation of the contract.

The appellees cite the case of *Maryland State Housing Co. v. Fish,* 208 Md. 331, 118 A. 2d 491, as authority for requiring in this case an allowance to them of the fair rental value of the property during the period of occupancy by the appellant, but in that case the facts were entirely different. The parties entered into a *written* contract, and the appellant therein thought the description of the property sufficient to comply with section 120 (1). A copy of this contract was duly furnished to the appellees. Practically all, if not all, of the formal provisions of the Land Instalment Contract Law were complied with. There was no contention that subsections (2) or (3) of section 119 were violated, or involved. The Court held that the description of the property contained in the agreement was not sufficiently definite to make that instrument valid and enforceable; and, upon the purchasers avoiding the contract, they should reduce their claim (the total amount paid by them under the contract) by a sum equal to the fair rental value of the premises during the period they occupied the property. It will be noted the appellees were asserting no statutory claim derived by them under the provisions of sub-section (3); they were simply claiming the privilege of avoiding an unenforceable contract, and recovering what was due them as a result thereof.

Sub-section (3) specifically states that until the vendee signs a land instalment contract and receives a copy thereof signed by the vendor, the vendee has an *unconditional* right to cancel the contract and to receive immediate refund of *all* payments and deposits made on account of or in contemplation of the contract. This sub-section makes no provision whatever for an allowance to the seller of an amount equivalent to the reasonable rental value of the property during the period of the purchaser's occupancy. It provides in sweeping and

all inclusive terms for the return of *all* deposits and payments for complete non-compliance with the statute, and it makes no exceptions. See *Baltimore National Bank v. State Tax Commission,* 297 U. S. 209 where the Supreme Court, speaking through Mr. Justice Cardozo, gave full effect to the uncompromising (word) "all". As we have held that the provisions of this sub-section cannot be waived, we think the appellant is entitled to recover her two deposits and all payments made to the appellees on account of the transaction. If the appellees find themselves in an unfortunate situation, it was brought about by their conduct, alone, in failing to comply with the procedure directed by the legislature.

The plaintiff is entitled not only to a decree for compensation, but also to a lien upon the house and lot involved herein to secure its payment. In *Boehm v. Boehm,* 182 Md. 254, 268, 34 A. 2d 447, this Court quoted, with approval, from 3 *Tiffany, Real Property,* (2nd Ed.), sec. 667, as follows:

> "The vendee under a contract for the sale of land has, in equity, before he receives a conveyance of the land, a lien thereon for any payments which he has made upon the purchase price in case the contract fails of consummation owing to the fault of the vendor."

Having arrived at this conclusion, it becomes unnecessary to consider any other points raised by the parties.

*Decree reversed, and case remanded for the entry of a decree in accordance with this opinion, appellees to pay the costs.*