536 A.2d 1169

**D & Y, INC.**

**v.**

**Clyde R. WINSTON**

**No. 742, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Feb. 8, 1988.

**Certiorari Granted June 2, 1988.**

Arnold M. Zerwitz (Zerwitz, Kirk & Erlich, on the brief) Towson, for appellant.

Jay Fred Cohen, Baltimore, for appellee.

Argued before MOYLAN, BISHOP, and ROBERT M. BELL, JJ.

BISHOP, Judge.

D & Y, Inc. (D & Y), appeals from an Order of the Circuit Court for Baltimore City by which summary judgment was granted in favor of appellee, Clyde R. Winston (Winston). D & Y asks one question: did the court err in granting the motion? We hold that it did not. For purposes of this appeal the parties agreed on the following:

## AGREED STATEMENT OF FACTS

Pursuant to Maryland Rule 1028(g), the parties agreed to the following facts.

The parties entered into and executed a land installment contract on August 31, 1984. The contract was recorded in the Land Records of Baltimore City on September 18, 1984.[1]

Appellee paid appellant $400.00 as a down payment and thereafter paid $9,131.04 in monthly payments for a total of $9,531.04.

Pursuant to appellee's claim that he was entitled to a refund of all payments, without setoff for rent, the following Order was entered in the Circuit Court for Baltimore City.

## ORDER

The Defendant, D & Y, Inc., filed a Motion for Summary Judgment which Motion was answered by the Plaintiff, Clyde R. Winston, who with his answer filed a Motion for Summary Judgment. Said Motions were based on the undisputed facts that the Land Installment Contract between D & Y. Inc. and Clyde R. Winston was signed by the parties on August 31, 1984 and was recorded among the Land Records of Baltimore City on September 18, 1984 more than fifteen (15) days after its execution.

---

1. Appellant urged that this was not an Executed Contract until September 6, 1984, pursuant to Truth in Lending, 12 C.F.R. Section 226.23 (1986).

A hearing was held on February 27, 1987 on both Motions, and it is hereby,

ORDERED, by the Circuit Court for Baltimore City, this 18th day of March, 1987, that:

1. The Defendant, D & Y, Inc.'s Motion for Summary Judgment is denied;

2. That the Plaintiff, Clyde R. Winston's Motion for Summary Judgment is granted;

3. That in accordance with the Annotated Code of Maryland, Real Property Article 10–102(f) the Land Installment Contract made between D & Y, Inc. and Clyde R. Winston is cancelled and the Plaintiff is to receive immediate refund of all payments and deposits made on account or in contemplation of the contract;

4. That the amount of the refund to be made to the Plaintiff, Clyde R. Winston, is:

| | | |
|---|---|---|
| A. | Down Payment | $ 400.00 |
| B. | Monthly payments made | 9,131.04 |
| | Total payments made to Defendant | $9,531.04 |

C. Plus all payments and interest now being held by the Court pursuant to the Stipulation entered into by the parties;

5. That the Defendant, D & Y, Inc. is not entitled to any setoffs for rent or any other reason as Real Property Article 10–102(f) does not allow any setoffs;

6. That judgment be and is hereby entered in favor of Plaintiff, Clyde R. Winston, against Defendant, D & Y, Inc., for $9,531.04;

7. That the Clerk of the Court be and he is hereby directed to deliver to the Plaintiff, Clyde R. Winston, and/or his counsel of record all payments and interest thereon now being held by the Court pursuant to the Stipulation entered into by the parties;

8. In the event that the parties do not agree that the amount that has been paid to the Defendant by the Plaintiff is $9,531.04, then this case shall be sent to a Master to determine the amount due to the Plaintiff by the Defendant. If the Master determines that the sum

due the Plaintiff by the Defendant is $9,531.04, then the costs of the Master shall be borne solely by the Defendant. If the Master determines a sum that is less than $9,531.04, then the Master's cost shall be divided equally between the parties.

To the Agreed Statement of Facts we add the following. The contract involved a single family row house located at 3520 Reisterstown Road in Baltimore City. The total purchase price was $32,900.00. Possession of the property was given to Winston at the time of the execution of the contract. The balance of the amount due on the property was to be paid in monthly installments beginning on October 1, 1984, and in accordance with the terms of the contract. The date on which D & Y recorded the contract among the Land Records of Baltimore City, September 18, 1984, was 18 days after the contract was signed by the parties.

More than two years later, Winston filed a complaint in which he alleged D & Y's failure to comply with the Land Installment Contract Act, §§ 10–101 through 10–110 of the MD. REAL PROP. ARTICLE (1987 Repl.Vol. and 1987 Cum.Supp.) (the Act). Winston claimed that because D & Y had violated § 10–102(f) of the Act by filing the contract more than fifteen days after it was signed and by failing to mail to Winston a recordation receipt [2], he was entitled to cancel the Contract and to a refund of all payments made thereunder. Winston also filed a Motion for Summary Judgment which was granted by the trial court.

D & Y bases its claim that the trial court erred when it granted Winston's Motion for Summary Judgment on two arguments. First, that the three day time period for re-

---

**2.** Based on the the foregoing Agreed Statement of Facts, the issue of whether the recordation receipt was mailed by D & Y or received by Winston is not before us. For this reason, we do not address the issue of what effect, if any, Winston's notice of D & Y's failure to record would have had on his entitlement under the statute, if, after notice that there had been a violation of the Act, he continued to occupy the dwelling and accept the benefits under the Contract.

scission provided under § 226.23 of the Federal Truth in Lending Act[3], tolls the recordation requirements of § 10–102(f). Second, that the trial court's interpretation of Section 10–102(f) was erroneous. Finally, D & Y asserts that even if the trial court was correct and Winston was entitled to a judgment under the statute, it was entitled to a setoff of the fair rental value of the property covering the period of Winston's occupancy.

### Federal Truth In Lending

■ Conceding that the contract was filed more than fifteen days after it was signed, D & Y argues that under § 226.23 of the Federal Truth in Lending Act, a consumer has the right to rescind an installment contract within three days of its signing and that that three day period for rescission tolls the running of § 10–102(f). D & Y claims, therefore, that its filing of the contract, on the 18th day after its execution, was timely. We hold that that section is not controlling in the case *sub judice*. Specifically, § 226.23 does not concern *recordation* of instruments and it does not therefore conflict with or control the specified provisions of Maryland law at issue here. In addition, transactions such as the installment sales contract at issue here are specifically exempted by § 226.23(f)(1) which provides:

> *Exempt transactions.* The right to rescind does not apply to the following:
>
> (1) A residential mortgage transaction.

A residential mortgage transaction is defined in 12 C.F.R. § 226.2(24) as:

> [A] transaction in which a mortgage, deed of trust, purchase money security interest arising under an *installment contract,* or equivalent consensual security interest is created or retained in the consumer's principal dwelling to finance the acquisition or initial construction of that dwelling. (Emphasis added.)

---

**3.** 12 C.F.R. §§ 226.1 through 226.29 (1976).

The installment contract executed by the parties specifically provided:

The Buyer agrees:

6. That he will not use or permit the use of the premises for purposes other than those of a dwelling.

7. That he will not rent the premises in whole or part without first obtaining the written consent of the Seller.

We read this as consistent with the requirement that the mortgage be "in the consumer's principal dwelling".

### The Summary Judgment

We now address whether the sanctions of cancellation and reimbursement contained in the statute apply to the facts of this case.

The primary source for determining the legislature's intent is the language of the statute itself which should be construed according to its ordinary and natural import. A statute should not be construed by forced or subtle interpretations designed to extend or limit the scope of its operation. Thus, where statutory language is plain and free from ambiguity and expresses a definite and sensible meaning, no construction or clarification is needed or permitted.

*Comptroller v. Fairchild Industries*, 303 Md. 280, 284, 439 A.2d 341 (1985) (citations omitted). The pertinent language of § 10–102(f) requires that

[w]ithin 15 days after the contract is signed by both the vendor and the purchaser, the vendor shall cause the contract to be recorded ... and shall mail the recorder's [receipt] to the purchaser.... Failure to do so or to record as required under this section within the time stipulated, gives the purchaser the unconditional right to cancel the contract and receive immediate refund of all payments and deposits made on account of or in contemplation of the contract.

The court granted summary judgment solely on the failure to record the contract within the fifteen days. We limit our review to that issue.

■ The plain language of the statute provides that the vendor "shall cause" the recordation. Failure to do so as required by the section gives the purchaser the "unconditional" right to cancellation and reimbursement of all monies paid under the contract. "[O]rdinarily the word 'shall', unless the context within which it is used indicates otherwise, is mandatory when used in a statute, and thus denotes an imperative obligation inconsistent with the idea of discretion." *Bright v. Unsat. C. & J. Fund Bd.*, 275 Md. 165, 169, 338 A.2d 248 (1975) and cases therein cited. In *Bright*, the Court of Appeals considered whether the term "shall", as used in MD.ANN.CODE art. 66½, § 154(a)(4) (1957, 1967 Repl.Vol.), was mandatory or merely directory. The statute under analysis in *Bright*, art. 66½ Section 154(a)(4), provided in pertinent part:

> The person also shall notify the [Unsatisfied Claim and Judgment Fund] Board of any action thereafter instituted for the enforcement of the claim within 15 days after the institution thereof, and the notice shall be accompanied by a copy of the complaint.

In analyzing the statute the Court of Appeals found no reason why the usual and literal meaning of the word "shall" should not be applied and concluded that the notice requirement of § 154(a)(4) was a "condition precedent to the right of the claimant to collect from the Board". 275 Md. at 170, 338 A.2d 248. The Court went on to state that regardless of the truthfulness of the claimant's contention that he had sent the required notice "there is no substitute for *actual receipt* of notice ... when the statute requires that the 'person shall notify the Board.'" 275 Md. at 168, 338 A.2d 248 (citation omitted). Upon our reading of § 10–102(f), we see "no ambiguity or obscurity in the language the Legislature elected to utilize to express its mandate" and therefore "the usual and literal meaning of the terminology employed will prevail". *Id.* at 169, 338 A.2d 248. Although appellant argues that the literal interpretation of the statute would provide an absurd result, we must

observe, as the *Bright* Court did, that "the word 'shall', unless the context within which it is used indicates otherwise, is mandatory when used in a statute". *Id.*

We are not unaware of the Court's language in *Miller v. West. Elec. Co.*, 310 Md. 173, 187, 528 A.2d 486 (1987), which provides: "If a statute contained plain language that, read literally, produced an absurd result inconsistent with the purpose of the statute we would not be compelled to read that language literally". (Citing *Kaczorowski v. Mayor & City Council of Balt.*, 309 Md. 505, 516, 525 A.2d 628 (1987)). Here we have a statute which contains plain language that, read literally, produces a result totally consistent with its purpose. *See Spruell v. Blythe*, 215 Md. 117, 121–22, 137 A.2d 183 (1957) and *Hudson v. Md. State Housing Co.*, 207 Md. 320, 331, 114 A.2d 421 (1955).

Appellant attempts to contrast *Spruell v. Blythe*, 215 Md. 117, 137 A.2d 183 (1957) with *Maryland State Housing Co. v. Fish*, 208 Md. 331, 118 A.2d 491 (1955) as a basis for its conclusion that the trial court's interpretation of the statute was erroneous. In *Spruell*, there was no compliance with the Land Installment Act and complete recovery under the statute was permitted, whereas in *Maryland Housing*, where there was a faulty description which was sufficient to void the contract, only a down payment and some repair costs were recoverable. An offset for the fair rental value of the property was permitted by the trial court; however, that issue was not disputed on appeal which was taken by the vendor. The *Spruell* Court adequately distinguished *Maryland Housing* when it stated:

> The appellees cite the case of *Maryland Housing Co. v. Fish*, 208 Md. 331, 118 A.2d 491, as authority for requiring in this case an allowance to them of the fair rental value of the property during the period of occupancy by the appellant, but in that case the facts were entirely different. The parties entered into a *written* contract, and the appellant therein thought the description of the property sufficient to comply with section 120(1). A copy of this contract was duly furnished to the appellees.

Practically all, if not all, of the formal provisions of the Land Installment Contract Law were complied with. There was no contention that sub-sections (2) or (3) of section 119 were violated, or involved. The Court held that the description of the property contained in the agreement was not sufficiently definite to make that instrument valid and enforceable; and, upon the purchasers avoiding the contract, they should reduce their claim (the total amount paid by them under the contract) by a sum equal to the fair rental value of the premises during the period they occupied the property. It will be noted the appellees were asserting no statutory claim derived by them under the provisions of sub-section (3); they were simply claiming the privilege of avoiding an unenforceable contract, and recovering what was due them as a result thereof.

The Court went on to point out that sub-section (3) [4] provided that, until the vendee received a copy of the contract, the vendor had an unconditional right to cancel and receive a refund of all payments and deposits. No claim was made

---

**4.** The following are the pertinent sections of MD.ANN.CODE, art. 21 (1951):

**119.** (Form and Delivery of Land Instalment Contracts.) (1) Every land instalment contract shall be evidenced by an instrument in writing signed by all of the parties thereto containing all of the terms to which they have agreed.

(2) At or before the time the vendee signs the instrument, the vendor shall deliver to him an exact copy of it and the vendee shall give the vendor a receipt showing that he has received the copy of the instrument. If such copy was not executed by the vendor, then unless the vendor within fifteen (15) days after notice that the vendee has signed, delivers to him a copy of the instrument signed by the vendor, the agreement and the instruments signed by the vendee shall be voidable at the option of the vendee and the vendor shall immediately upon demand refund to the vendee all payments and deposits theretofore made.

The receipt for the delivery of a copy of an instrument shall be printed in 12–point bold type or larger, typewritten or written in legible handwriting, and, if contained in the contract shall be printed, typewritten or written immediately below the signature of the contract and shall be independently signed.

under the statute for cancellation and reimbursement and that issue was not before the Court in *Maryland Housing. Spruell* and *Maryland Housing* are not comparable and cannot be used for the purpose of contrasting a strict application of the statute where there was no compliance (*Spruell*) with a liberal application where there was substantial compliance (*Maryland Housing*). We hold that § 10–102(f) means what it says and that failure of the vendor to comply with its requirements mandates the statutory relief granted by the trial court. *Spruell, supra,* 215 Md. at 121–22, 137 A.2d 183; *Cf. Hudson v. Md. State Housing Co.,* 207 Md. 320, 114 A.2d 421 (1955).

Nonetheless, appellant argues:

---

(3) Until the vendee signs a land instalment contract and receives a copy of it, signed by the vendor the vendee has an unconditional right to cancel the contract and to receive immediate refund of all payments and deposits made on account of or in contemplation of the contract. A request for such refund shall operate to cancel the contract; or

(4) When any such payment or deposit is accepted by the vendor from a vendee, the vendor shall immediately deliver to him a receipt therefor, which clearly states in 12–point type or larger, in typewriting or in legible handwriting his rights under paragraph (3) above.

**120.** (Disclosure in the Contract.) (1) Every land instalment contract shall state the full names, the place of residence and post office addresses of all the parties thereto and the date when signed by the vendee. It shall contain a clear designation of the property covered by the contract and shall recite in simple tabular form the following separate items and in the following order:

(a) the cash price of the property sold;

(b) any charges or fees for services which are included in the contract separate from the case price;

(c) the cost to the vendee of any insurance coverage from the date of the contract, for the payment of which credit is to be extended to the vendee, the amount or extent and expiration date thereof, a concise description of the type of coverage, and the party or parties to whom such insurance is payable;

(d) the sum of items (a), (b) and (c);

(e) the amount of vendee's down payment, if any;

(f) the principal balance owed, which is the sum of item (d) less item (e);

(g) the amount and time of each instalment payment;

(h) the interest on the unpaid balance not to exceed 6% per annum, ground rent, if any, taxes and other public charges.

· · · · ·

It is difficult to imagine a more absurd and unjust result than a seller being compelled to supply a buyer with a year of free rent simply because of an alleged technical violation of the statute in recording the agreement three (3) days late.

Yet, the words of the statute are crystal clear:

Failure ... to record *as required under this section within the time stipulated,* gives the purchaser the *unconditional* right to cancel ... and ... receive immediate refund.... (Emphasis added).

Under the Agreed Statement of Facts it is conceded that the contract was not recorded "within the time stipulated" in § 10–102(f). From this follows the clear and unequivocal language of the statute concerning the "unconditional" right which the court granted in the judgment. The legislative intent is clear and "[t]he cardinal rule of statutory construction is to ascertain and carry out the real legislative intent". *City of Baltimore v. Hackley,* 300 Md. 277, 283, 477 A.2d 1174 (1984). And "[i]n determining that intent, the Court considers the language of an enactment in its natural and ordinary signification". *Id.* We do not see how the words italicized above may mean, in their natural and ordinary signification, anything but a legislative mandate that there is to be strict compliance. We are not permitted to "insert or omit words to make a statute express an intention not evidenced in its original form". *Id.* As we were taught in *Comptroller, supra,* 303 Md. at 284, 439 A.2d 341, we may not "by forced or subtle interpretations ... extend or limit the scope" of a statute. And where the "statutory language is plain and free from abiguity and expresses a definite and sensible meaning, no construction or clarification is needed or permitted". *Id.* (citations omitted).

In the course of our research we found that Section 10–102(f) was previously codified as MD.ANN.CODE art. 21 § 10–102(F) (1957). When it was recodified and made part

of the Real Property Article, the Revisor's Note which accompanied § 2, Chapter 12, of the 1974 Laws of Maryland pointed out that "[s]ubsection (f) is unclear to the extent that it fails to indicate whether the purchaser has a perpetual right to cancel and receive a refund or whether this right expires at some time *e.g.* when the vendor records the contract. The Commission recommends that the General Assembly consider enacting separate legislation to remedy this ambiguity." We must assume that the General Assembly has been aware of the Revisor's Note during the twelve sessions which have been convened since 1974. In its wisdom, it has not reacted to the note and we conclude from that inaction that it does not agree that an ambiguity exists and therefore that the statute means what it says.

*Setoff*

■ The only "argument" on this issue contained in the appellant's brief is that "... appellant was entitled to a setoff of the fair rental value". This clearly does not comply with Md.Rule 1031 c 5. Appellee did not respond to this issue and based on the authority contained in Rule 1031 c 5, we decline to address the issue as well. In addition, no claim for setoff was formally made before the trial court. *See First National Bank v. Shpritz*, 63 Md.App. 623, 638, 493 A.2d 410, *cert. denied*, 304 Md. 297, 498 A.2d 1184 (1985); *District Agency Co. v. Suburban*, 224 Md. 364, 167 A.2d 874 (1961).

JUDGMENT AFFIRMED;

COSTS TO BE PAID BY APPELLANT.