578 A.2d 1177

**D & Y, INC.**

**v.**

**Clyde R. WINSTON.**

**No. 30, Sept. Term, 1988.**

Court of Appeals of Maryland.

Sept. 11, 1990.

Arnold M. Zerwitz (Zerwitz, Kirk & Erlich, both on brief), Towson, for petitioner.

Jay Fred Cohen (Cohen & Liner, both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS * and BLACKWELL,* JJ.

McAULIFFE, Judge.

This case involves the interpretation of § 10–102(f) of the Real Property Article, Maryland Code (1974, 1988 Repl. Vol.), which requires a vendor in a land installment sales transaction to record the contract within 15 days of its execution and provides a penalty for failure to do so. The vendor in this case was one day late in recording the contract. Nearly two years later, the purchaser, after occupying the property and making the payments required by the contract, demanded the return of all payments, contending that the statute prescribed that penalty for late recording. The vendor disagreed, arguing alternatively that the statute did not provide for a return of payments under these circumstances, or if it did, there should be a set-off for the reasonable rental value of the property

---

* Adkins and Blackwell, JJ., now retired, participated in the hearing and conference of this case while active members of this Court; after being recalled pursuant to the Constitution, Art. IV, Sec. 3A, they also participated in the decision and the adoption of this opinion.

during the period of occupancy. We hold that the vendor is correct in its first contention.

The facts are uncomplicated and were never in dispute. Clyde R. Winston entered into an agreement on 31 August 1984, to purchase a house in Baltimore City pursuant to a land installment contract. The vendor, D & Y, Inc., recorded the agreement among the land records of Baltimore City on 18 September 1984. Section 10–102(f), of the Real Property Article, which is a part of a comprehensive regulation of land installment contracts, provides:

> Within 15 days after the contract is signed by both the vendor and purchaser, the vendor shall cause the contract to be recorded among the land records of the county where the property lies and shall mail the recorder's receipt to the purchaser. This duty of recordation and mailing of receipt shall be written clearly or printed on the contract. Failure to do so, or to record as required under this section within the time stipulated, gives the purchaser the unconditional right to cancel the contract and to receive immediate refund of all payments and deposits made on account of or in contemplation of the contract.

Nearly two years after Winston took occupancy under the contract, he brought an action in the Circuit Court for Baltimore City seeking rescission and a full refund of all payments made in contemplation of the contract. The trial judge granted Winston's Motion for Summary Judgment and ordered a refund of $9,531.04, the total of payments made to D & Y by Winston. On appeal, the Court of Special Appeals affirmed the trial court. *D & Y, Inc. v. Winston*, 74 Md.App. 157, 536 A.2d 1169 (1988). We granted D & Y's petition for certiorari.

The contract between the parties was in the form required by law, and a copy was delivered to the purchaser. The contract was duly executed by both parties on 31 August 1984. According to the statute, the vendor was then obliged to record the contract within 15 days. Computing that time in accordance with Maryland Code (1957,

1985 Repl.Vol.) Art. 94, § 2, it is clear that the contract should have been recorded no later than 17 September 1984.[1] It was in fact recorded at 9:30 a.m. on 18 September 1984, one day late.

Winston contends, and the courts below agreed, that § 10–102(f) is not ambiguous, and by its clear language mandates the return of all payments if the recording of the contract is late, whether it be a day or an hour. D & Y argues[2] that § 10–102(f) does not mandate a return of payments for late recording when the claim for rescission is not made until after the recording is accomplished, or in the alternative, that it should be entitled to a set-off for the reasonable rental value of the premises during Winston's occupancy. Because we agree with D & Y's first argument, we do not reach its alternative contention.

We conclude that § 10–102(f) is ambiguous. It is not clear whether the right to rescind exists only if exercised before recording is accomplished, or is a right that may be exercised at any time following the vendor's failure to accomplish a timely recording. This ambiguity in the statute was noted in the Revisor's notes to this section found at Chapter 12 of the Laws of 1974:

> Subsection (f) is unclear to the extent that it fails to indicate whether the purchaser has a perpetual right to

---

**1.** Under the statutory scheme for computing the proper time period, the day the contract was signed is not counted. Thus, the 15th day fell on Saturday, 15 September 1984. Because the clerk's office is not open on Saturday, the time for recording is extended to the next day that the office is open, which was Monday, 17 September 1984.

**2.** At one point in its brief, D & Y appears to abandon its argument that Winston is not entitled to rescission. The issue was presented in the trial court and in the Court of Special Appeals, and is fairly embraced within the question upon which we granted certiorari. This Court is not bound to follow the concession of a party on a matter that is properly before us. *See Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co.,* 429 U.S. 363, 368 n. 3, 97 S.Ct. 582, 586 n. 3, 50 L.Ed.2d 550 (1977). *Cf. Maryland Life & Health Ins. v. Perrott,* 301 Md. 78, 86, 482 A.2d 9 (1984). We elect to consider and decide this issue.

cancel and receive a refund or whether this right expires at some time, *e.g.* when the vendor records the contract. The Commission recommends that the General Assembly consider enacting separate legislation to remedy this ambiguity.

■ This Court has said repeatedly that construction of a statute which is unreasonable, illogical, unjust, or inconsistent with common sense should be avoided. *See, e.g., Kindley v. Governor of Maryland,* 289 Md. 620, 625, 426 A.2d 908 (1981); *State v. Berry,* 287 Md. 491, 496, 413 A.2d 557 (1980); *Comptroller v. John C. Louis Co.,* 285 Md. 527, 539, 404 A.2d 1045 (1979); *Pan Am. Sulphur v. State Dep't,* 251 Md. 620, 627, 248 A.2d 354 (1968). In 2A *Sutherland Statutory Construction* § 45.12 (4th ed.1984), the author states:

> It has been called a golden rule of statutory interpretation that unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result.

If Winston's view of the statute is correct, a purchaser with knowledge that the contract was recorded late may occupy the property for an indefinite period of time, secure in the knowledge that there is an absolute right to rescind the contract at any time, and recoup all monies paid. This interpretation produces an absurd and unjust result.

We conclude that the legislature intended to give the purchaser the right to cancel the contract and recover all payments if recording is not accomplished within the specified 15 days, provided that the election is made and communicated before recording is actually accomplished. The legislature did not want to give the purchaser the unilateral right to rescind at any time before recording, i.e., during the 15–day period allowed the vendor to record. It is only after that time has expired that the purchaser's right arises, which explains the General Assembly's use of the language "[f]ailure ... to record as required under this section within

the time stipulated ...'' as a condition to the right of the purchaser to cancel. The statute is silent on the question of whether that right extends beyond the actual recording, and it is into this breach that the Court must step with a reasonable interpretation.

This interpretation is also consistent with the earlier provisions of the statute. Subsections (a) and (b) of § 10–102 require that every land installment contract be signed by the parties, and that the purchaser be given a copy of the contract at the time he signs it. The purchaser must be given a copy signed by the vendor within 15 days after the vendor receives notice that the purchaser has signed. Subsection (d) provides the sanction for failure to comply with these requirements:

> *Until* the purchaser signs a land installment contract and receives a copy signed by the vendor, the purchaser has an unconditional right to cancel the contract and to receive immediate refund of all payments and deposits made on account of or in contemplation of the contract. A request for a refund operates to cancel the contract. (emphasis supplied).

It seems clear that the legislature intended that the purchaser possess the extraordinary right of cancellation only *until* compliance by the vendor. Should a vendor miss the 15–day time limit for forwarding a copy of the agreement signed by him, but comply on the 20th day, before any notice of cancellation had been given by the purchaser, the purchaser could not thereafter cancel. In *Spruell v. Blythe,* 215 Md. 117, 120, 137 A.2d 183 (1957), relied upon by Winston, the vendor never complied with the requirements of the law.

Subsection (f) was added to the statute after its original enactment. It is reasonable to assume, in the absence of the specific language to the contrary, that the legislature intended the additional sanction to follow the scheme already established.

The trial judge should not have entered summary judgment in favor of Winston. Because Winston has made other claims that have not been considered, we reverse and remand for further proceedings.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND TO REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENT.

ELDRIDGE, COLE and ADKINS, JJ., dissent.

COLE, Judge, dissenting.

The Court today holds that subsection (f) of § 10–102 of the Real Property Article of the Maryland Code (1974, 1988 Repl.Vol.), provides that the purchaser's unconditional right to cancel a land installment contract terminates when the vendor records the contract. I think this holding is incongruous and defeats the purpose for which this statute was enacted. I, therefore, respectfully dissent.

The state of affairs for vendees (purchasers) buying real property under land installment contracts, at the time legislation for this type of transaction was contemplated, was most disheartening. As the Legislative Council pointed out in its report to the General Assembly:

> In many instances such an agreement has been made between landlord and tenant, as an attempt to circumvent rent control regulations by substituting the relationship of seller and buyer. One result has been that the buyer-tenant could build up a considerable equity in the property and then be dispossessed and lose all his equity in case of any default.

*Legislative Council Report to the General Assembly of 1951*, Vol. 2, Item No. 71, p. A–44. The inequities surrounding use of installment contracts to purchase land did not

end there. The reality was that oftentimes the purchasers were those who were poor and partially illiterate and, therefore, could not establish credit or did not possess the astuteness to understand real estate transactions. But nevertheless, pressed with the need to obtain a home, purchasers would enter into installment contracts in which the vendor charged an amount which far exceeded the purchaser's weekly income and, thus, virtually guaranteed default by the purchaser—the remedy for which was forfeiture. The result was that the vendor not only took repossession of the property, but also kept all installment payments previously paid regardless of the amount. Moreover, forfeitures occurred with such frequency that a vendor would resell property to the same vendee repeatedly but at a higher price and without credit for payments made on the principal in the original contract.

The inequities between parties to a land installment contract during this period are made manifest when one reviews a summary of the provisions routinely inserted into these contracts:

1. Time is of the essence of this contract.

2. In the event of a default by the vendee, the *vendor shall immediately,* upon such default, *have the right to declare the contract void and retain whatever may have been paid* on said contract, and all improvements that may have been made on said premises and may take immediate possession of the premises and remove the vendee.

3. Any default shall cause all subsequent payments to become due immediately, and *vendor shall have the right to compel the continued performance of the contract* by the vendee.

4. Upon any default by the vendee, *the vendor shall have the right to foreclose the* contract.

5. The *vendor shall have the right to use any and all of the above-mentioned remedies.*

6. Waiver of any breach of this contract resulting from default on the part of the vendee shall not be deemed to be a waiver of any other [breach].

(Emphasis supplied). Levin, *Maryland Rule on Forfeiture under Land Installment Contracts ... A Suggested Reform*, 9 Md.L.Rev. 99, 104 (1948). This article triggered, to a great extent, legislative attention to the problem, resulting in the passing of the 1951 bill.

The resulting legislation, now recodified as Md.Real Prop. Code Ann. §§ 10–101 to 10–104, was designed to correct and avoid the egregious results from which vendors unfairly benefitted. More specifically, § 10–102 established the following:

(b) **Vendor to give copy of instrument and purchaser to give receipt.**—At or before the time the purchaser signs the instrument, the vendor shall deliver to him an exact copy and the purchaser shall give the vendor a receipt showing that he has received the copy of the instrument. If the copy was not executed by the vendor at the time the purchaser signed, the vendor shall deliver a copy of the instrument signed by him within 15 days after he receives notice that the purchaser has signed and the purchaser shall give the vendor a receipt showing that he has received the copy. If the vendor fails to deliver the copy within 15 days, the contract signed by the purchaser is void at his option, and the vendor, immediately, on demand, shall refund to the purchaser all payments and deposits that have been made.

(c) **Receipt.**—The receipt for the delivery of a copy of a contract shall be printed in 12–point bold type or larger, typewritten or written in legible handwriting. If contained in the contract, the receipt shall be printed, typewritten, or written immediately below the signature on the contract and shall be signed separately.

(d) **Right of purchaser to cancel and receive refund until copy of instrument is given him.**—Until the purchaser signs a land installment contract and receives a copy signed by the vendor, the purchaser has an uncondi-

tional right to cancel the contract and to receive immediate refund of all payments and deposits made on account of or in contemplation of the contract. A request for a refund operates to cancel the contract.

(e) **Vendor to give purchaser receipt for payment or deposit.**—When any payment or deposit is accepted by the vendor from a purchaser, before the purchaser signs a land installment contract and receives a copy, the vendor immediately shall deliver to him a receipt, which clearly states in 12–point type or larger, in typewriting or in legible handwriting, his rights under subsection (d).

Section 10–103 further required that the vendor include certain information in the contract. For example, notice to the purchaser was required, conspicuously printed, of his right to receive a copy of the contract at the time he signed it. Moreover, the vendor had to reserve a space in the contract where the purchaser could sign, acknowledging receipt of a copy of the contract. The vendor was also required to inform the purchaser of his liability in the event of default. *See* § 10–103(a).

In 1957, the legislature added subsection (f) to 10–102 to further discourage recurrence of former evils accomplished through this type of contract. This subsection made it mandatory for vendors to record the executed contract within 15 days of execution. Failure to do so gave the vendee the unconditional right to cancel the contract and to immediately receive a full refund. In the usual real estate transaction, the obligation to record placed upon vendors by this subsection, was the purchaser's. This was probably the case because it was believed that the purchaser of land would record the deed expeditiously in order to protect his rights. On the other hand, because of the naivete of the purchaser under a land installment contract, the legislature obviously saw fit to saddle the vendor, who had more experience in these transactions, with this obligation.

Contrary to subsection (d), which clearly indicates that the purchaser's unconditional right to cancel exists only until a copy of the executed contract is received, subsection

(f) does not identify an event which terminates the purchaser's unconditional right to cancel. Rather, both subsections are consistent in that neither makes any provision "for an allowance to the seller of an amount equivalent to the reasonable rental value of the property during the period of the purchaser's occupancy." *Spruell v. Blythe,* 215 Md. 117, 123–24, 137 A.2d 183, 187 (1957).

At the time the Land Installment Contract Law was recodified, in 1974, the commission, in the Revisor's Note following § 10–102, suggested that the legislature clarify the ambiguity as to when, if ever, the purchaser's right under this subsection expires.[1] It has been fifteen years since that recommendation was made and the General Assembly has not acted upon it.

To me, the legislature's inaction reinforces its intent to emphasize just how "unconditional" the purchaser's right to cancel and receive a full refund is. I am convinced that this statute was enacted in order to rectify a situation in which the poor and disadvantaged were victimized by unscrupulous vendors. The majority, however, is unconcerned that its holding establishes a loophole for vendors who may now delay recordation of the contract in order to circumvent the intent of the statute. The majority appears only fearful that if the purchaser exercises his unconditional right to rescind, the vendor may be required to fully refund all payments made under the contract. But it seems, to me, this is what the legislature intended. Admittedly, the instant case is one of extremes in that the vendor was one day late in recording the contract, and the purchaser did not exercise his right to rescind until two years later. None-

---

1. The relevant portion of the Revisor's Note, accompanying § 2, ch. 12 of the 1974 Laws of Maryland, states:

   Subsection (f) is unclear to the extent that it fails to indicate whether the purchaser has a perpetual right to cancel and receive a refund or whether this right expires at some time, e.g., when the vendor records the contract. The commission recommends that the General Assembly consider enacting separate legislation to remedy this ambiguity.

theless, the language of the statute places no time limit on when the purchaser may exercise his right of cancellation.

The time provisions are not complied with by a late recordation; instead, subsection (f) contains a stringent penalty clause. *See Russ v. Barnes,* 23 Md.App. 691, 699, 329 A.2d 767, 771 (1974). The purchaser's unconditional remedy becomes effective when there is a failure to record "as required under this section within the time stipulated." § 10–102(f).

Close examination of the statute reveals that the legislature consciously considered the effect noncompliance would have on a vendor's rights as well as a vendee's. *See* 10–102(d) and 10–106. These sections set forth, in clear, unequivocal language, what allowances would be made for a vendor or vendee who fails to comply with the statute. Conversely, § 10–102(f) does not make provisions for a vendor who records the contract outside the 15 day time period—obviously for the reason that the legislature did not intend to give vendors an opportunity to circumvent the vendee's right to rescind under these circumstances.

In construing the statute to reach its holding, the majority would have to add the following language: the vendee has an unconditional right to cancel *until the vendor records the contract.* The majority justifies its construction under the guise of providing "a reasonable interpretation ... consistent with the earlier provisions of the statute." By this holding, however, the majority seeks to legislate, which is not its function. And we have repeatedly stated that the court may not "attempt, under the guise of construction, to supply omissions or remedy possible defects in [a] statute." *In re Appeals Nos. 1022 & 1081,* 278 Md. 174, 178, 359 A.2d 556, 559 (1976) (citation omitted); *see also State v. In re Patrick A.,* 312 Md. 482, 487, 540 A.2d 810, 812 (1988); *Bridges v. Nicely,* 304 Md. 1, 10–11, 497 A.2d 142, 147 (1985); *Board of Education of Garrett Co. v. Lendo,* 295 Md. 55, 63, 453 A.2d 1185, 1189 (1982); *Smelser v. Criterion Ins. Co.,* 293 Md. 384, 389, 444 A.2d 1024, 1027 (1982); *Hurst v. V & M of Virginia,* 293 Md. 575, 578, 446

A.2d 55, 57 (1982); *Department of State Planning v. Mayor and City Council of Hagerstown*, 288 Md. 9, 15, 415 A.2d 296, 299 (1980). Moreover, as a general proposition, the statute's provisions are to be construed in favor of those for whom it was enacted. *Caton Ridge, Inc. v. Bonnett*, 245 Md. 268, 272, 225 A.2d 853, 855 (1967).

Had the legislature intended to make allowances for a vendor's good faith failure to record, it could have done so at the time subsection (f) was drafted or, at least, within the 15 years since the issue was brought to its attention. The legislature did nothing. Consequently, today's holding not only emasculates the 15–day recordation rule, but also unjustifiably expands the time in which a vendor may record the contract. The majority gives the vendor a right the legislature never intended.

For these reasons I would affirm the judgment of the Court of Special Appeals.

Judges ELDRIDGE and ADKINS have authorized me to state that they concur in the views herein expressed.