## JOHN GORNEY, ET AL. *v.* MARION MARCONI

[No. 149, October Term, 1945.]

*Decided June 13, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*John E. Raine, Jr.,* for the appellants.

*W. LeRoy Ortel* for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

The appellants, as tenants by the entireties, own Lots 32, 33, 34 and 35, Block D, of the plat of Fairlawn, in

Baltimore County. Lots 34 and 35 were owned by them on June 15, 1945, and were then improved by a two-story brick building with a store on the first floor and an apartment on the second, known as 6922 Holabird Avenue. Lots 32 and 33 were acquired on August 11, 1945. The appellee runs a shoe repairing shop at 7190 Holabird Avenue. About the middle of June, 1945, he met Mr. Gorney and inquired what he was asking for the property No. 6922 Holabird Avenue. Mr. Gorney told him to come over and see Mrs. Gorney. The appellee offered $5,500 subject to a ground rent of $1,000. The appellants wanted $5,800. A short time later appellee was told he could have the property at $5,700. He went over, saw the appellants, and they all got together at a price of $5,600, plus the ground rent. Appellee gave them $50 and he and Mr. Gorney went to the daughter's apartment, which was on the second floor of the building negotiated for, and she wrote and gave to Mr. Marconi, the appellee, a receipt, which, however, was not signed. Appellee testified Mr. and Mrs. Gorney told him that evening that if he didn't have much money they would finance it. However, he went to a building association and arranged for a loan. Then he went back to the Gorneys, and Mrs. Gorney told him he could make repairs, so that when the building association was ready, he could move in. She gave him the key, and he went ahead. He had linoleum put on the floor, had two coats of paint put on the store room, had some shelves built, and had a sign put outside with his name and business on it. The total cost of this work was $272. At the time of the purchase of the property it was agreed that the lot would be 18 feet in the front and 17½ feet in the rear. The building association wanted it surveyed. The parties met at the office of the attorney for the building association after a survey had been made at the cost of appellee, and found that the surveyor had allowed 18.4 feet in the front and only 15.16 feet in the rear. That was due to the fact that the building was not placed squarely on the lot. The surveyor had taken the side

line of the building as the line to the end of the lot. It was then agreed that there should be another survey, and a second settlement date was set for a week or two later. At the second settlement, the attorney for the appellants had prepared a deed according to the second survey. The description gave the appellee 18 feet in front and 17½ feet in the rear, but in so doing, and in order to make the line straight, a little over a foot in the rear came from Lot 33, which, meanwhile had been acquired by the appellants. When this deed was read, the appellants objected and said that they were not selling any part of Lot 33. Mrs. Gorney then tried to give back the $50 to the appellee, or to his attorney, but they declined to receive it. The settlement sheets had all been made up, had been gone over, and appellants' attorney testified that the appellants either approved them or had made no objection to them. Their refusal to go through with the transaction was based upon this small sliver of land which was surveyed to come off of Lot 33. Subsequent to the last meeting, above mentioned, the appellee's attorney wrote to appellants' attorney, stating that appellee was not interested in just how the lines ran, provided he could get 18 feet on Holabird Avenue, about which there was no dispute, and 17½ feet in the rear. He suggested that appellants' attorney prepare a description so that the 17½ feet in the rear did not take in any of Lot 33. There was no result from this letter. The appellee then brought a bill for specific performance of the contract, the court below decreed such performance, and from that decree the appeal comes here.

The appellants' answer denies that any sale was made, admits they both attended on the two dates set for settlement, and that a key was given appellee, and sets up the defense of the Statute of Frauds. No mention was made of any question of the conveyance of part of Lot 33. When they gave their testimony, Mrs. Gorney said she did not get the $50 deposit. She saw the money laying on the desk. She did not give Mr. Marconi the key. She told her husband not to sell her share, but he

could sell his share, that she was keeping the property for her son who was overseas. Her husband wanted to sell, but she did not. · She admitted she tried to give Mr. Marconi the $50 at the second meeting of the parties, but she said she got the money from her husband. She said she did not come to either meeting to sign a deed. She did not discuss any price, and she went to the settlements to see what they were going to do to Mr. Gorney. No mention was made by her of the little piece of land from Lot 33. Mr. Gorney testified that he gave the key to Mr. Marconi and got the $50 and went down and told his daughter to make out a receipt for $50, but not to sign his name. That he saw the painting being done and did not object. He thought he was selling the place to the appellee. That he sold him 18 feet in front and 17½ feet in the rear, and then he thought everything was all right until Mr. Marconi told him he was getting the money from the building association. That he then said he would not sell, that he wanted to finance the property himself and wanted to get the 6 per cent. interest on the balance of the purchase price. That he thought he could sell without his wife saying so. That his wife came along to the settlements to see if he was going to sell it without her. That when Mr. Marconi was going to make him miss his interest, he would not sell. He insisted that his refusal to sell was because the property was being financed through the building association. He said nothing about the ground taken from Lot 33.

The appellee's testimony, already related, was fully corroborated as to the reason given at the second meeting for appellants' refusal to carry out the bargain by Mr. Hennegan, who was at that time representing the appellants, and also by Mr. Ortel, the attorney for the appellee. The latter said, in addition, that he took two men from the building association, went down to the premises and talked to both Mr. and Mrs. Gorney. That Mr. Gorney made no objection to the financing being done by the building association. That Mr. Gorney came

up to the building association once with Mr. Marconi, and wanted to know what was holding up the deal.

The receipt given Mr. Marconi by Mrs. Hewitt, the appellants' daughter, states "Received $50 on property from Mr. Marconi." Later Mr. Marconi noticed that it had no description of the property, and after his name he wrote in pencil "6922 Holabird Avenue." He also noticed it had not been signed, and took it back and Mrs. Hewitt wrote on it "John M. Gorney, 721 Martell Avenue." Mr. Gorney was not present when his signature was written on it, and both he and Mrs. Hewitt testified that he told her not to sign his name to it. It is not contended by the appellee that this recipt is a sufficient memorandum under the Statute of Frauds. But he claims that the action of appellants in giving it to him, considered in connection with putting him in possession and permitting him to make improvements on the property, takes the case out of the bar of the statute. The court below agreed with this contention.

The law is well settled that a parol contract to sell land will be enforced if there are acts of part performance. But such acts of part performance must be acts done in pursuance of the contract. Thus, the mere taking possession of property is not sufficient, unless such possession is taken under the contract. *Boehm v. Boehm*, 182 Md. 254, 34 A. 2d 447. A number of the cases are cited and discussed, and the law stated in the case of *Soehnlein v. Pumphrey*, 183 Md. 334, 37 A. 2d 843. It is unnecessary to quote from these authorities. The question before us is whether the facts measure up to the requirements laid down.

Here we have a prospective purchaser making an agreement with both husband and wife, paying $50 on the purchase price, getting a key, entering into possession of the store part of the property he was purchasing, and which he was going to occupy himself, painting it, putting down linoleum, having shelves built, and putting out a sign in front, indicating that he was going to conduct his business there. He made arrangements to have

his purchase financed through a building association, and when a survey was required and was made and a settlement date fixed, there came the first objection, which was by the husband and which was that the survey did not give the purchaser the amount of land agreed upon. This was corrected, a new survey was made, a deed was drawn up, and when the parties arrived at the place of settlement, the settlement sheet and figures were all read, and if not agreed upon, at least there was no protest. Then, when the description in the deed was read, which gave the purchaser the amount of land agreed upon, but went over a little into a newly acquired lot, both of the vendors objected. They did not ask that this be corrected and a new deed drawn, but tried to return the deposit and have the whole transaction declared off. When they were brought into court, in the answer filed by both defendants, and in the testimony of each of them, there is no mention whatever of the objection they raised at the second settlement. On the contrary, the wife says that she never intended to sell her part of the property, as she wanted it for her son. The husband said he did intend to sell, but that he was going to sell and finance, and when he couldn't get his interest, he refused to complete the sale, because that was part of the consideration. The contention of the wife is negatived by the testimony of the purchaser that she made the agreement in the first place, that she took the money, and that she gave him the key. It is also negatived by the testimony of both counsel that she went to both settlements without any notice to the purchaser that she was not going through with the contract. The testimony of the husband is negatived by the fact that he let the purchaser make the improvements to the property without objection, and went to the building association, told them that the survey was not correct, and made no objection about not being allowed to finance the transaction either to the purchaser or his attorney until the hearing of the case. The latter said he had never heard of it until the testimony was given.

It seems clear to us that these defenses were trumped up after the suit had been brought, for the purpose of defeating the contract, and that they have no real substance and are not the real reason why the appellants decline to carry out their contract. Certainly, they are not valid reasons to prevent a court of equity from compelling a performance. Each of the appellants is estopped by his or her actions from making the particular defense which he or she now makes. We think the putting of the purchaser in possession, and permitting him to make the improvements that were made, is sufficient to take the case out of the bar of the Statute of Frauds, and that specific performance ought to be granted.

The question whether the small part of Lot 33 should be included in the deed, might have some equity in favor of the appellants, if they had pressed it. They did not own Lot 33 when they made the contract. But they did own it when the settlement was ready. On this basis they could very well claim that the 18-foot front and the 17½-foot rear with the building on it, must be carved entirely out of one of the lots they owned at the time the contract was made. However, although this was the ground on which they refused to go through with the settlement, they did not testify about it in the lower court and it is only mentioned in the conclusion of their brief in this Court, as a basis for saying that there is an uncertainty as to what was to be sold.

The appellants could, of course, have agreed to sell property which they did not then own. It nowhere appears that they agreed to sell a part of Lot 34 or a part of Lot 35. What they agreed to sell was the building with a lot 18 feet in front and 17½ feet in the rear. And the survey, in order to make the line straight, took in this piece of ground, slightly more than one foot, which came out of the lot they subsequently acquired. When the objection was made at the settlement the appellee offered to take the same amount of ground to be carved out of Lot 34, even though the lines would not be perfectly straight, but the appellants made no reply to this

offer. It is evident that this question had nothing to do with their refusal. Under these circumstances we do not feel it is necessary to send the case back to have a new survey made and to have the lot, to be conveyed, included entirely within the boundaries of Lot 34. The decree, which describes the conveyance of the lot in accordance with the survey's description, will be affirmed.

*Decree affirmed, with costs.*