581 A.2d 819

**Norman Martin MANN**

v.

**WHITE MARSH PROPERTIES, INC.**

**No. 3, Sept. Term, 1990.**

Court of Appeals of Maryland.

Nov. 7, 1990.

**112**

George W. Liebmann and Orbie R. Shively (George W. Liebmann, P.A., on brief), Baltimore, for petitioner.

J. Calvin Jenkins, Jr. (Agatha M. Rosenbaum, on brief), Towson, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ.

RODOWSKY, Judge.

This case presents a variation on a common theme. We shall hold that summary judgment was properly granted where there were conflicting inferences, because the conflicting inferences were not of material fact. That result occurs in this purchaser's specific performance action where the purchaser's sole avoidance of a Statute of Frauds defense is part performance. The undisputed acts relied on for part performance may, or may not, relate to a contract for the purchase and sale of realty. Accordingly, the acts are legally insufficient to satisfy the Statute.

Prior to September 1985 respondent, the plaintiff in the trial court, White Marsh Properties, Inc. (White Marsh), through its president, Ronald Parker, Esq. (Parker), had been negotiating to acquire from Norman Martin Mann (Mann), a physician residing in Connecticut, a parcel of real estate located adjacent to Pulaski Highway in White Marsh, Maryland. In a letter to Mann, dated September 30, 1985, Parker stated he would pay Mann's asking price for the property, contingent upon Baltimore County's approval of a percolation test and upon issuance of a building permit "so that I would be able to build offices and/or garages with a private septic system as there is no public sewerage available." Acknowledging Mann's concern over possible liability for a realtor's commission, Parker nevertheless said that he would not accept responsibility for commissions because he would be paying the full asking price.

In that letter Parker also enclosed a proposed contract, signed by him for White Marsh. Parker requested that Mann sign and return it "so that I may begin filing for the necessary permits and zoning variances." The proposed contract contained the two above-described conditions. According to the contract, White Marsh agreed "to file application and take percolation tests within 30 days of the signing of this Contract and to file for building permits within 60 days from the date hereof[.]" By its terms the offer was to "expire October 10, 1985, if not accepted prior to that date."

By a handwritten letter dated October 19 Mann replied, stating that Parker would have to bear any commissions and that Mann "would *require* a *definite date* for transfer of Title, let us say, Jan 5–1986[.]" (Emphasis in original).

On December 13 Parker wrote to Mann's attorney advising that Parker "need[ed] a Contract of Sale signed by the Sellers [sic] at your earliest possible convenience since we are scheduled to take the perc. test on December 20, 1985." Enclosed was a proposed affidavit for Mann to sign, the object of which was to defend against or defeat any claim for commissions. By signing Mann would also have agreed, "[p]ursuant to Contract of Sale which is now being negotiated," and in exchange for indemnification against realtors' fees, to come to Maryland to testify concerning negotiations directly between the parties "for the past several years."

Neither the contract nor the affidavit were ever signed by Mann.

The next communication, a letter to Mann dated December 30, 1985, was from an attorney representing White Marsh. Counsel stated his "understanding" that an agreement had been formed. Counsel's client was said to be "very upset" because, "relying on your promises," White Marsh had the title searched, "[m]et with Baltimore County on numerous occasions to check the zoning and arrange for the perc. test to be taken[,]" obtained a hearing on an exemption from the requirement that perc tests be taken only during non-winter months; had an engineer design a site plan, and had an architect draw building plans. Counsel represented White Marsh was able, ready and willing to settle on January 4, 5, 6, or on any day shortly thereafter. The record contains no response from Mann.

In a January 3, 1986, letter to Mann, White Marsh's attorney wrote that he had spoken with the realtor and received assurances that no commission would be due. He reiterated White Marsh's willingness to proceed to settlement. The record contains no response from Mann.

It appears that White Marsh sometime thereafter sued Mann in an action which was voluntarily dismissed. Parker made affidavit in the instant action that Mann "indicated that he would only sell the property if I dismiss the suit, at which time he would negotiate to sell the property." In that affidavit Parker says that he did dismiss the suit, that Mann then insisted on a price of $350,000 and that the highest price previously agreed upon was $85,000.

The instant specific performance action was filed December 16, 1988. The theory of the case is that a contract between the parties was formed on or about October 19, 1985, that performance was subject to two conditions precedent, and that both conditions were satisfied by January 2, 1986. Mann moved for summary judgment, contending that the alleged contract was unenforceable under the Statute of Frauds. White Marsh opposed summary judgment on the grounds, *inter alia*, that there were conflicting material facts and that part performance had satisfied the Statute. The circuit court concluded "that the requirements for effecting the original intent of the parties in avoidance of the Statute of Frauds have not been met." Summary judgment was entered in favor of Mann.

On appeal, the Court of Special Appeals reversed in an unreported opinion. That court reasoned as follows:

> "It is not entirely clear from the facts in this case whether White Marsh is in a position unequivocally different from that which it would be in had there been no contract. It is a plausible inference that White Marsh would neither have tested the land nor hired an architect to plan buildings for it but for the existence of an agreement with Mann. Conversely, it is equally plausible that these actions were merely investigatory and were used by appellant to value the property as an aid in the process of its negotiations with Mann. As these conflicting factual inferences are material to the issue of whether White Marsh partially performed the contract, we conclude that summary judgment was improper."

We granted Mann's petition for certiorari, which raises one question:

"[W]hether a trial court may properly grant summary judgment in favor of a defendant on the issue of the Statute of Frauds where the plaintiff seeks to enforce an alleged oral contract for the sale of land under the doctrine of part performance and the acts alleged to constitute part performance are inconsistent with the contract alleged in the plaintiff's pleadings." [1]

No action may be brought on a contract for the sale of land unless the contract or "some memorandum or note of it, is in writing and signed by the party to be charged...." Md.Code (1974, 1988 Repl.Vol.), § 5–104 of the Real Property Article. To be enforceable the memorandum must be:

"(1) a writing (formal or informal);

(2) signed by the party to be charged or by his agent;

(3) naming each party to the contract with sufficient definiteness to identify him or his agent;

(4) describing the land or other property to which the contract relates; and

(5) setting forth the terms and conditions of all the promises constituting the contract made between the parties."

*Beall v. Beall,* 291 Md. 224, 228–29, 434 A.2d 1015, 1018 (1981).

■ Only one document presented to the trial court was signed by Mann, the party to be charged. That writing, the handwritten note of October 19, 1985, sets out conditions but does not include any other contractual terms and does not refer to any document containing other contract elements. Hence, it does not satisfy the Statute of Frauds.

■ The deposition of Mann was taken on October 31, 1986. A deposition might satisfy the Statute of Frauds if it

---

**1.** By addressing the Statute of Frauds, the only issue presented on certiorari, we do not imply that, but for the Statute, the facts would be sufficient to prove formation of a contract.

contains an admission of the existence of the contract. *See Litzenberg v. Litzenberg,* 307 Md. 408, 415, 514 A.2d 476, 479 (1986). Mann's deposition testimony, however, indicates only that the financial terms were agreed upon, despite the considerable efforts of White Marsh's counsel to obtain admissions as to other terms and conditions. That deposition also fails to conform to the requirements of the Statute of Frauds.

■ Turning to the question of part performance, it is clear that the very ambiguity upon which the Court of Special Appeals relied in reversing the trial court prevents applying the doctrine of part performance. In order for the acts of one party to transcend the bar of the Statute of Frauds, those acts generally must be of such character that " ' "the court shall, by reason of the act itself, without knowing whether there was an agreement or not, find the parties unequivocally in a position different from that which, according to their legal rights, they would be in if there were no contract." ' " *Unitas v. Temple,* 314 Md. 689, 709, 552 A.2d 1285, 1294 (1989) (quoting *Dale v. Hamilton,* 5 Ha. 369, 381 (1846) as appearing in J. Pomeroy, *Specific Performance of Contracts* § 107, at 259 n. 2 (3d ed. 1926)).

White Marsh's activities included having the title searched, having plans prepared and reviewed for zoning compliance, and making arrangements for a percolation test. As the Court of Special Appeals recognized, these actions are consistent with the existence of a contract, and they are also consistent with the absence of a contract, in that they are consistent with investigations preliminary to, or part of, negotiations. Simply by reason of these acts the circuit court could not find, on the record in summary judgment, that the parties were unequivocally in a position different from that which, according to their legal rights, they would be in if there were no contract.

■ The Statute of Frauds is not satisfied by part performance based upon acts that are equivocal as to the

existence of a contract. Because White Marsh's acts do not satisfy the Statute of Frauds, in that they are equivocal, summary judgment was properly entered for Mann under the applicable substantive law. The intermediate appellate court, however, applied the procedural rule, which prevents summary judgment where there is a genuine dispute of material fact or there are conflicting, material inferences to be drawn from undisputed primary facts. Here, there is no dispute of material fact, as there would be, for example, had there been a dispute as to whether or not White Marsh in fact had taken some particular action which, if performed, would be unequivocal as to the existence of a contract. There is no dispute in the present case about the acts that White Marsh performed—acts that are equivocal as to the existence of a contract. Thus, as a matter of law, the acts do not satisfy the Statute of Frauds. The question was one for the court on summary judgment and not one for the court as a trier of fact.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT FOR THE ENTRY OF A JUDGMENT AFFIRMING THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY WHITE MARSH PROPERTIES, INC.