716 A.2d 384

**Earl COLLINS, Personal Representative of the Estate of Thomas Lawrence Collins**

v.

**Gerald Paul MORRIS.**

**No. 1526, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Aug. 28, 1998.

Reconsideration Denied Sept. 29, 1998.

Louis Fireison (Louis Fireison & Associates, P.A., on the brief), Bethesda, for appellant.

Jeffrey B. Fisher, Upper Marlboro, for appellee.

Argued before SALMON and EYLER, JJ., and ROSALYN B. BELL, Judge (retired), Specially Assigned.

**768**

EYLER, Judge.

The parties to this appeal seek a final determination of their rights and obligations in certain real property. Appellant contends that this case should be analyzed as a conditional bequest of real property, which bequest lapsed for failure of the condition. Appellee contends that this case should be analyzed as an oral contract to convey real property under the statutes governing land installment contracts. Md.Code, Real Property Article (RP), §§ 10–101 et seq. The trial court found that there was an oral contract to convey real property and granted relief to the purchaser by ordering a refund of all payments made under RP § 10–102(d), but refused to grant specific performance or other relief pursuant to RP §§ 10–105 and 10–108. While we hold that the trial court did not err in finding the existence of a valid contract, the record does not support the trial court's finding regarding the total amount paid by appellee under the contract. For this and other reasons explained below, we shall vacate the judgment of the trial court and remand for further proceedings.

## Facts

Not surprisingly, the parties disagree as to when the relevant facts begin. Appellant, Earl Collins, Personal Representative of the Estate of Thomas Collins, states that the beginning point is when the decedent, accompanied by appellee, Gerald Paul Morris, went to a lawyer, Charles J. Janus, on October 17, 1991, for the purpose of preparing a will for decedent. According to appellant, the decedent explained to Mr. Janus that he wanted his friend, appellee, to have decedent's house located at 2414 Shadyside Avenue, Suitland, Maryland, provided that appellee pay for it. Mr. Janus explained that the parties should execute a contract of sale, but the decedent refused to pay the quoted fee. The decedent requested Mr. Janus to prepare a simple will, which he did, and it was executed by the decedent. The parties never entered into a written contract of sale. The will contained the following provision:

ARTICLE II. To my friend, Gerald Paul Morris, of Suit-land, Maryland, I give, devise and bequeath my house and land at 2414 Shadyside Avenue, Suitland, Maryland upon the following conditions:

That Gerald Paul Morris is buying the aforesaid property for a contract price of $88,000.00 at a rate of $1,000.00 per month commencing November 1, 1991 plus the payment of all outstanding and ongoing property taxes. If I die prior to the payment of all this money, then Mr. Morris can continue to pay $1,000.00 per month plus $85.00 interest per month and all outstanding property taxes to my personal representative as and for the residuary estate. When the entire sum is paid, my personal repre-sentative shall convey a deed to Mr. Morris acknowl-edging that he owns the property as sole tenant in fee simple.

The Will was executed on October 17, 1991, and the decedent died in March, 1992.

Beginning in 1990, and prior to the execution of the Will by decedent, appellee made payments to the decedent. Appellee continued making those payments after execution of the Will. The payments were not always made at the same time in a given month, and payments were not made in all months. The parties dispute the amount of the total payments. In any event, appellee stopped making payments after September, 1995. In November, 1995, appellant filed a complaint for repossession of the property in the District Court for Prince George's County, seeking possession for nonpayment of rent for the months of September, October, and November, 1995. That case was dismissed by the court.

On February 7, 1996, appellant filed this suit in the Circuit Court for Prince George's County. In an amended complaint, appellant sought (1) a declaratory judgment with respect to the rights and obligations of the parties, (2) possession of the property pursuant to RP § 14–108.1,[1] (3) damages for breach

---

1. Section 14–108.1(a) and (b) provide, in part:

of contract, (4) an injunction to prevent occupancy of the premises by appellee, and (5) to prevent unjust enrichment, damages for the months in which the property was occupied by appellee without payment.

The beginning of the relevant facts, as perceived by appellee, was in 1990, when the decedent entered into an alleged oral contract with the appellee to sell the real property to appellee for the price of $100,000, payable at a rate of $1,000 per month, plus the payment of real estate taxes. In September, 1990, appellee began making payments and took possession of the property. On October 17, 1991, the decedent and appellee went to Mr. Janus so that the decedent could execute a will. The decedent told Mr. Janus about the contract at that time, and informed Mr. Janus that the contract price was $100,000 and that appellee had paid $12,000, leaving a balance of $88,000. Mr. Janus suggested that the contract be put in writing, but the decedent did not want to pay the costs for preparation of a contract. A will was prepared, as stated previously.

Appellee filed a counterclaim in the proceedings below, contending that there was an oral contract which was binding under the statutes governing land installment contracts. Appellee sought specific performance of the contract pursuant to RP §§ 10–105 and 10–108 [2] or, in the alternative, rescission

(a) *Application of section.*—This section does not apply to:
(1) A grantee action under § 14–109 of this subtitle; or
(2) A landlord-tenant action that is within the exclusive original jurisdiction of the District Court.
(b) *Right to bring action.*—(1) A person who is not in possession of property and claims title and right to possession may bring an action for possession against the person in possession of the property.

2. RP § 10–105 provides in pertinent part:
(a) *Right to demand grant upon execution of mortgage; expenses.*—If the contract fixes no earlier period, when 40 percent or more of the original cash price of the property is paid, the purchaser may demand a grant of the premises mentioned in the contract, on the condition that he execute a purchase money mortgage to the vendor, or to a mortgagee procured by the purchaser....
RP § 10–108 provides:

pursuant to RP § 10–102(f).[3] Appellee also included a count asserting malicious use of process based on the filing of the prior district court action.

The case was tried non-jury on November 22, 1996. The trial court, by memorandum opinion and order filed on July 22, 1997, and order filed August 14, 1997, ruled as follows. The court agreed with appellee and found that appellee and the decedent had entered into a contract for the sale and purchase of the subject property for a purchase price of $100,000 payable in $1,000 monthly installments. The court found that appellee should receive from appellant the sum of $42,345 in payments made, less the sum of $18,400 in fair rental value payments he should have made from October, 1995 through August 31, 1997, leaving a balance due to appellee in the amount of $23,945 as of August 31, 1997. The court ordered that a lien be entered in favor of appellee against the real property in question. The court denied all other claims by both parties.

### Questions Presented

The appellant presents a number of issues on appeal that we have rephrased as follows:

1. Was the trial court's finding, that Gerald Morris and Thomas Collins had entered into a valid land installment contract, correct?

---

If a vendor fails to comply with the provisions of 10–105 or 10–107 of this subtitle, the purchaser has the right to enforce these sections in a court of equity. If the court finds that the vendor has failed to comply with these provisions, the court shall grant appropriate relief and shall require the vendor to assume all court costs as well as a reasonable counsel fee for the purchaser's attorney.

3. In our view, the more pertinent reference is to RP § 10–102(d):
*Right of purchaser to cancel and receive refund until copy instrument is given him.*—Until the purchaser signs a land installment contract and receives a copy signed by the vendor, the purchaser has an unconditional right to cancel the contract and to receive immediate refund of all payments and deposits made on account of or in contemplation of the contract. A request for a refund operates to cancel the contract.

a)  Does the contract violate the statute of frauds?

b)  Are material terms of the contract so vague and uncertain as to render the contract unenforceable?

c)  Does the contract violate the rule against perpetuities?

In addition, appellee presents certain additional questions that we have rephrased as follows:

1.  Did the trial court err in failing to grant appellee his attorney's fees?

2.  Was the trial court's finding, that appellee had paid $42,345, clearly erroneous?

3.  Did the trial court err in determining that appellant was entitled to an offset for the fair rental value of the property for a portion of appellee's occupancy?

## Discussion

### A.

■  Appellee informs us that, while this appeal was pending, appellant filed a forcible entry and detainer action in the District Court for Prince George's County and obtained judgment against appellee. Accordingly, appellee has vacated the premises and has abandoned his claim for specific enforcement under RP §§ 10–105 and 10–108. Thus, the remaining issues between the parties are the amount of refund, if any, owed to appellee, and whether the trial court should have awarded appellee his attorney's fees. The parties agree that the former issue, and the one we address in this section, turns upon whether appellee and the decedent entered into a valid land installment contract within the meaning of RP § 10–101(b). Specifically, if a valid land installment contract does exist, appellee is entitled to a refund of all payments made to appellant and the decedent without an offset for the fair rental value of the property during appellee's occupancy. *Spruell v. Blythe*, 215 Md. 117, 137 A.2d 183 (1957). If, by contrast, there is no valid land installment contract, any refund to appellee must be offset by the fair rental value of the property

for appellee's entire period of occupancy. *Szaleski v. Goodman*, 260 Md. 24, 271 A.2d 524 (1970); *Maryland State Housing Co. v. Fish*, 208 Md. 331, 118 A.2d 491 (1955).

RP § 10–101(b) provides as follows:

*Land installment contract.*—"Land installment contract" means a legally binding executory agreement under which (1) the vendor agrees to sell an interest in property to the purchaser and the purchaser agrees to pay the purchase price in five or more subsequent payments exclusive of the down payment, if any, and (2) the vendor retains title as security for the purchaser's obligation.

Appellant contends that the arrangement in question is not a "legally binding executory agreement" within the meaning of this subsection. In support of his position, appellant first argues that there was no written agreement of sale sufficient to satisfy the statute of frauds. *See* RP § 5–104.[4] Appellant explains that the attempt to convey the property by conditional bequest could not satisfy the requirement of a writing, and the statute was not satisfied by part performance because the payments were made pursuant to the bequest and not pursuant to a contract. Second, appellant argues that the agreement was too vague and uncertain to be enforceable, and third, that the agreement, as found to exist by the trial court, violated the rule against perpetuities.

### 1.

Preliminarily, we note that the purpose of the statute of frauds

is the prevention of successful fraud by inducing the enforcement of contracts that were never in fact made. It is not to prevent the performance or the enforcement of oral

---

**4.** That section provides:

No action may be brought on any contract for the sale or disposition of land or of any interest in or concerning land unless the contract on which the action is brought, or some memorandum or note of it, is in writing and signed by the party to be charged or some other person lawfully authorized by him.

contracts that have in fact been made; it is not to create a loophole of escape for dishonest repudiators. Therefore, we should always be satisfied with "some note or memorandum" that is adequate, when considered with the admitted facts, the surrounding circumstances, and all explanatory and corroborative and rebutting evidence, to convince the court that there is no serious possibility of consummating a fraud by enforcement. When the mind of the court has reached such a conviction as that, it neither promotes justice nor lends respect to the statute to refuse enforcement because of informality in the memorandum or its completeness in detail.

Corbin on Contracts, § 22.1, pp. 703–04 (Rev. ed.1997).

■ In this case, the existence of an oral contract was established by the testimony of appellant's own witness, Mr. Janus, who was decedent's counsel and the drafter of the will. On direct, Mr. Janus testified that, during a meeting of Mr. Janus, the decedent, and appellee, the decedent informed Mr. Janus that he was selling his house to appellee. Mr. Janus testified that he advised the decedent to put the agreement in writing but that the decedent did not want to pay the cost of preparing a contract. Finally, he testified that the decedent decided to have a will prepared rather than a contract only because the preparation of a will was less expensive than the preparation of a contract. On cross-examination, Mr. Janus further testified that, at the meeting, it was revealed to him that the contract price was $100,000, and that $12,000 had been paid, leaving a balance of $88,000. He could not remember if he was so informed by the decedent or appellee, but he did remember that, at the very least, the decedent acknowledged that these facts were true. Mr. Janus also testified that, as of the time of the meeting, appellee had moved onto the property. Appellee and another witness supplied the details that appellee had moved onto the subject property in the fall of 1990, and had begun making $1,000 monthly payments at that time. On the strength of this testimony, the trial court found that, prior to the drafting of the will, the decedent and appellee had entered into a contract for a

purchase price of $100,000 payable in $1,000 monthly install-ments, $12,000 of which had been paid as of the time the will was drafted. Appellant offered no evidence to contravene these basic facts. Instead, appellant makes arguments that are almost wholly legal in nature.

Appellant argues that a will is ambulatory and has no legal effect until the testator's death. According to appel-lant, the decedent could have revoked the terms of his will any time up to the date of his death with no legal repercussions. Thus, appellant asserts, a bequest in a will cannot constitute and is "completely different from a contractually binding memorandum sufficient to take a case out of the Statute of Frauds." Contrary to appellant's assertion, although a will is freely revocable anytime prior to the testator's death, it still may constitute a memorandum of a collateral agreement suffi-cient to satisfy the statute of frauds. *See* Corbin on Con-tracts, *supra*, § 22.6, pp. 735–36. Indeed, the will, on its face, describes the terms of a land installment contract between appellee and the decedent. *Compare Chilcoat v. Reid*, 154 Md. 378, 140 A. 100 (1928) (devise of real property conditioned upon payments of support to the testator's niece that bore no relationship to value of property). Moreover, the terms ex-pressed in the will are consistent with the version of events testified to by Mr. Janus, and ultimately found by the trial court. Arguably, the will does not expressly reference the contract that was found by the trial court; it does not refer-ence a contract that was made in 1990 for the sale of the subject property for a purchase price of $100,000.[5] It is clear

---

5. "[A] memorandum, in order to make enforceable a contract within the Statute of Frauds, may be any document or writing, formal or informal, signed by the party to be charged or by his agent actually or apparently authorized thereunto, which states with reasonable certain-ty, (1) each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent, (2) the land, goods or other subject-matter to which the contract relates, and (3) the terms and conditions of all promises constituting the contract and by whom and to whom the promises are made." *Sinclair v. Weber*, 204 Md. 324, 332, 104 A.2d 561 (1954)

from the testimony of the drafter of the will, however, that that fact is the fault of the drafter.

In any event, there was sufficient evidence of part performance to satisfy the statute.[6]  Specifically, there was evidence that appellee moved onto the subject property and began making monthly payments in the fall of 1990.  At the time of the meeting with Mr. Janus, $12,000 had been paid.  Thereafter, appellee continued making monthly payments up to and including August, 1995, including the payment of real estate taxes and expenditures for repairs.

Appellant nonetheless maintains that the payments made by appellee do not constitute part performance sufficient to satisfy the statute of frauds because they are not unequivocally, directly, and specifically referable to the contract.  More specifically, appellant argues that the payments made prior to the decedent's death could just as easily have been rent as payments on a land installment contract.  Further, the payments made after decedent's death are referable to the bequest in the will.

The types of acts that will satisfy the doctrine of part performance are such that

> the court shall, by reason of the act itself, without knowing whether there was an agreement or not, find the parties in a position different from that which, according to their legal rights, they would be in if there were no contract.

*Unitas v. Temple,* 314 Md. 689, 709, 552 A.2d 1285 (1989) (quoting J. Pomeroy, *Specific Performance of Contracts,* § 107, at 259 n. 2 (3d ed.1926), in turn quoting *Dale v. Hamilton,* 5 Ha. 369, 381 (1846)).

---

(citing 1 *Restatement, Contracts,* sec. 207; *London v. Riebel,* 189 Md. 376, 56 A.2d 34).

**6.** It is well-settled that the doctrine of part performance is an equitable principal, available only when the relief sought is equitable in nature. *See Unitas v. Temple,* 314 Md. 689, 700–01, 552 A.2d 1285 (1989).  It is equally clear that "legally binding executory agreement," under the Act, means that the agreement must be capable of specific performance. *See Szaleski* and *Fish, supra.*

*Mann v. White Marsh Properties, Inc.,* 321 Md. 111, 581 A.2d 819 (1990), a case cited by appellant, was a suit for specific performance of an oral contract for the sale of land. In that case, the Court of Appeals held that summary judgment was properly granted in favor of the seller when the purchaser's sole avoidance of a statute of frauds defense was the contention that there had been part performance. The purchaser had argued that certain preparatory steps he had taken—obtaining Baltimore County's approval of a percolation test and a building permit—were conditions precedent of the oral contract and, thus, constituted part performance. The Court noted that there was no dispute that the acts had been performed. Rather, there were conflicting inferences to be drawn from those undisputed primary facts. The acts were consistent both with the purchaser's contention that a contract existed, and the seller's contention that the parties had not completed negotiating a contract. Under these circumstances, the Court ruled that the acts were not unequivocally referable to the contract and that summary judgment was properly granted based on the statute of frauds defense.

In this case, appellant offered no evidence that appellee was occupying the premises pursuant to a tenancy, and the trial court found as a matter of fact that there was no landlord-tenant relationship between appellant and appellee. The court concluded that the payments made by appellee were not rent but were made to purchase the property. Those findings were not clearly erroneous and, consequently, unlike the situation in *Mann,* the acts constituting appellee's part performance—taking possession of the premises, and making payments over the course of four years—were consistent only with the existence of a contract to purchase the property.[7]

---

7.  In appropriate circumstances, the Courts of this State have held part payment coupled with the taking of possession to constitute sufficient part performance of an oral land sale contract to remove the bar of the statute of frauds. *See Serio v. Von Nordeck* 189 Md. 388, 391–92, 56 A.2d 41 (1947); *Bauer v. Hamill,* 188 Md. 553, 566, 53 A.2d 399 (1947); *Gorney v. Marconi,* 186 Md. 582, 589, 47 A.2d 762 (1946); *Soehnlein v. Pumphrey,* 183 Md. 334, 336, 37 A.2d 843 (1944); *Allers v. Klein,* 161

2.

■ Appellant contends that the terms of the purported contract are too vague and indefinite to be capable of enforcement. Thus, under *Szaleski, supra,* the Act does not apply and any refund to appellee must be offset by the fair rental value of the property for appellee's entire occupancy. Appellant does not contend that, similar to the contract in *Szaleski,* the contract fails to identify the subject property with sufficient definiteness. Rather, appellant argues that there is no evidence to spell out appellee's current liability, there is no interest rate stated, no method for calculating interest due, no time stated for full payment, and no statement of penalties. In our estimation, the material terms of the contract are sufficiently certain and definite to render the contract enforceable.

As noted above, there was ample evidence upon which the trial court could find that appellee and the decedent entered into a land installment contract for the subject property for a contract price of $100,000 payable at $1,000 per month plus outstanding and ongoing real estate taxes. Implicit in such an agreement is the term that $1,000 will be paid each month until the principal is completely paid. Accordingly, the term of payment is 100 months. *See Gilbert,* 255 Md. at 195, 257 A.2d 206 ("the only possible uncertainty is the term of the mortgage which can easily be determined by resorting to readily available tables relating to monthly reduction loans").

Next, there is the issue of interest. Under the agreement, as found by the trial court, there was no provision for interest payments. The contract provided for the payment of principal only. Accordingly, the cases regarding ambiguity for failure to state a rate of interest are inapposite. *See, e.g., Chambers v. Jordan,* 257 Md. 144, 262 A.2d 505 (1970) (contract provided

Md. 194, 203, 155 A. 420 (1931); *Gorsuch v. Kollock,* 139 Md. 462, 467, 470, 115 A. 779 (1921); *Snyder v. Snyder,* 79 Md.App. 448, 454–56, 558 A.2d 412, *cert. denied,* 317 Md. 511, 564 A.2d 1182 (1989). *Compare Bank v. Hurst's Estate,* 187 Md. 333, 338, 50 A.2d 133 (1946) *Boehm v. Boehm,* 182 Md. 254, 264–65, 34 A.2d 447 (1943); *Semmes v. Worthington,* 38 Md. 298 (1873).

as follows: purchase price of $34,500; $5,000 paid as deposit/down payment; $25,000 deed of trust to be obtained by seller; remaining purchase price to be paid at closing; contract did not specify any of the terms of the deed of trust); *Manning–Shaw Realty Co. v. McConnell,* 244 Md. 579, 224 A.2d 445 (1966) (same rationale as *Silverman, infra* ); *Silverman v. Kogok, Adm'r,* 239 Md. 71, 77–78, 210 A.2d 375 (1965) (sale of 18,300 square feet at 90 cents per square foot; contract provided for $2,800 down payment and provided that the balance would be payable at a rate of $100 per month; contract also provided for 6% interest, but did not indicate whether $100 payment included interest or was principal only; distinction was difference between $100 and $168 per month); *Standard Homes, Inc. v. Pasadena Building Co.,* 218 Md. 619, 626, 147 A.2d 729 (1959) (seller agreed to convey certain lots in exchange for "such purchase money mortgage as would allow the buyer to obtain a construction mortgage;" none of the terms of such mortgage—e.g., time, mode and terms of payment, including interest rate—were even mentioned); *Smith v. Biddle,* 188 Md. 315, 52 A.2d 473 (1947) (contract provided for $4,000 purchase price, $500 down payment, and balance to be paid by a mortgage or mortgages to be arranged; neither terms, interest rate nor amortization rates provided). In each of the cases above, the contract omitted material terms and thus was unenforceable. The missing terms of the various financing arrangements determined such pertinent issues as the time over which the balances would be paid, the numbers and amounts of periodic payments, and the total amounts of interest payable under the contracts. By contrast, in the instant case, each of these terms was fixed.

Appellant notes that the will contains a provision for interest of $85.00 per month commencing upon Mr. Collins's death. The trial court did not make a finding that the contract had been modified to include this term, and indeed, the record extract is silent regarding the exchange of any consideration to support such a modification.[8] Even if we presume that the

---

8. Regardless of whether there was an enforceable modification, the checks and receipts included in the record extract indicate that appellee

contract was modified to include interest as set forth in the will, such modification does not render the contract unenforceable for vagueness. The significance of a rate of interest is only that the total amount of interest due under the contract may be determined by reference to the interest rate and the term of payment. In this case, where the amount of periodic interest payments and the term of payments is given, the interest rate would add nothing. Granted, the term of interest payments was contingent upon the date of Mr. Collins's death. As of the date the term purportedly was added to the agreement, however, the minimum and maximum amounts of interest potentially due under the contract could be calculated quite easily, and with the employment of basic algebra, a weighted average could be determined.

Finally, the absence of a default provision does not render the contract invalid for vagueness. *Gilbert v. Banis*, 255 Md. 179, 189, 257 A.2d 206 (1969) (quoting *Baker v. Dawson*, 216 Md. 478, 494–95, 141 A.2d 157 (1958)). In the absence of such provisions, the seller must proceed under his or her common law remedies in the event of a default. *See Paape v. Grimes*, 256 Md. 490, 493, 260 A.2d 644 (1970) (discussing *Brown v. Hardcastle*, 63 Md. 484 (1885); Court noted that, in *Brown*, mortgage provided interest of one percent until principal became due, and was silent as to any provision of interest in the event the principal was not paid upon maturity. Under such circumstances, the Court held that the debtor was subject to the legal rate of interest after the date of maturity.).

---

operated under the impression that interest was due each month, although, inexplicably, he paid $88, rather than $85 per month. Possibly, the consideration for any modification was the procurement by the decedent of a writing evidencing the agreement. In any event, the trial court was not required to determine whether there had been a modification given that the relief provided was a refund of all amounts paid. There was no need to determine the amount of the balance due under the contract, an amount that would change depending upon whether or not interest was due.

### 3.

■ Appellant next argues, again relying on the terms of the will as the relevant source of the terms of the contract, that because appellee was permitted to occupy the property indefinitely without making payments but ownership could not vest unless full payment is made, the contract violates the rule against perpetuities. The trial court found that the rule against perpetuities was inapplicable because, under these circumstances, the law implies a reasonable time for payment. We agree. *See Brown v. Parran,* 120 Md.App. 653, 662, 708 A.2d 12 (1998).

### B.

We now turn to appellee's issues. As explained below, the trial court correctly denied appellee attorney's fees. We do not find, however, a basis in the record for the trial court's determination of the total payments made by appellee. Further, the trial court's determination, that appellee is liable for rental payments beginning in October, 1995, necessarily rests upon certain factual findings that the trial court never expressed. Rather than try to guess what those findings were, we direct the court to make express findings on remand.

### 1.

Appellee maintains that he was entitled to an award of attorney's fees pursuant to RP § 10–108. That section provides as follows:

If a vendor fails to comply with the provisions of § 10–105[9] or § 10–107 of this subtitle, the purchaser has the right to enforce these sections in a court of equity. If the court finds that the vendor has failed to comply with these

---

**9.** As set forth in footnote 2, *supra,*this section entitles the purchaser, upon payment of 40 percent or more of the purchase price, to demand grant of the premises on the condition that he execute a purchase money mortgage to the vendor, or to a mortgagee procured by the purchaser.

provisions, the court shall grant appropriate relief and shall require the vendor to assume all court costs as well as a reasonable counsel fee for the purchaser's attorney.

■ The trial court determined that appellee was entitled to relief under RP § 10–102 rather than under RP §§ 10–105 and 10–108, and there is no corresponding right to an award of attorney's fees provided in RP § 10–102. The trial court held that relief under RP § 10–108 was not available because the contract was not in writing.[10] Relying upon RP § 10–102(d) and *Spruell, supra,* the trial court held that relief was available under RP § 10–102(d). Although, it is true that the contract was not in writing, we see nothing in the Act limiting the relief provided in RP § 10–108 to written contracts. The Act defines a "land installment contract" as a "legally binding executory agreement under which (1) the vendor agrees to sell an interest in property to the purchaser and the purchaser agrees to pay the purchase price in five or more subsequent payments exclusive of the down payment, if any, and (2) the vendor retains title as security for the purchaser's obligation." As noted above, the agreement did meet this definition. That having been said, the trial court necessarily could not have awarded both rescission under RP § 10–102 and specific performance under RP § 10–108. On appeal, appellee has abandoned his claim under RP § 10–108.

■ Appellee nevertheless argues that RP § 10–108 entitles him to recover attorney's fees if he was entitled to relief under that section, regardless of whether he ultimately obtained relief under that section. We think that appellee's reading of this section is strained. We interpret RP § 10–108 to require the award of attorney's fees only if relief is awarded pursuant to this section. Thus, the trial court did not err in refusing to award attorney's fees to appellee.

---

10. RP § 10–102 provides that all land installment contracts shall be in writing. RP § 10–103 sets forth certain requirements regarding the contents of such a writing.

## 2.

■ We agree with appellee that the record does not support the trial court's finding that appellee paid $42,345 under the contract, yet the trial court found as a matter of fact that appellee made twelve $1,000 payments prior to the execution of the will, and the record contains copies of checks and receipts evidencing additional payments in excess of $40,000. As we cannot ascertain the basis for the trial court's computation, we shall remand for a recalculation of the payments.

## 3.

■ Finally, appellee argues that the trial court was clearly erroneous in determining that appellant was entitled to an offset for the fair rental value of appellee's occupancy of the premises after September, 1995. In support, appellee argues that he was not unjustly enriched and that he was occupying the premises as a purchaser, not a tenant, and this was found as a fact.

Pursuant to RP § 10–102(d), appellee was entitled to demand a refund of the amounts paid under the contract. Such a demand would have cancelled the contract. The trial court's determination that appellee was liable for rent after September, 1995, may have been based upon a finding that the contract was cancelled as of that date. The trial court made no such express finding, however, and it does not appear that such a finding would be sustainable upon the record before us. Thus, on remand, the trial court should determine the date the contract was cancelled and calculate an offset for appellee's occupancy of the premises after such date.

**JUDGMENT VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLANT.**