901 A.2d 223

Benjamin WHITAKER, Jr.

v.

Dorothy WHITAKER.

No. 0970, Sept. Term, 2004.

Court of Special Appeals of Maryland.

June 29, 2006.

Andrew K. O'Connell (Andre R. Weitzman & Assoc., on the brief), Baltimore, for appellant.

Michael E. Henderson (Lloyd, Kane, Wieder, Willis & Henderson, PA, on the brief), Ellicott City, for appellee.

Panel: SALMON, MEREDITH and CHARLES E. MOYLAN, JR., (Retired, Specially Assigned) JJ.

MEREDITH, J.

In this case, we shall hold that the subject real estate transaction involved a land installment contract, as defined in Maryland Code (1974, 2003 Repl.Vol.), Real Property Article ("RP") § 10–101. Because the vendor failed to record the contract, as required by RP § 10–102(f), the purchaser of the property had the unconditional right to cancel the contract and receive a refund of all payments made. The circuit court erred in ruling that the purchaser was not entitled to the remedial relief prescribed by RP § 10–102(f). Accordingly, we shall vacate the judgment of the circuit court and remand this case for further proceedings.

### Facts and Proceedings in Circuit Court

Benjamin Whitaker, appellant, wanted to buy a home, and asked his sister, Dorothy Whitaker, appellee, to help him with the finances. Benjamin picked out a house, and Dorothy purchased the property, taking title in her name alone on October 30, 1998. Dorothy and Benjamin agreed that Benjamin would reside in the property and pay Dorothy monthly installments to reimburse her for the $50,000 purchase money she advanced plus 10% interest. Without legal counsel, the sister and brother prepared and signed a document titled "Loan Repayment Agreement," which confirmed that Dorothy would deed the property over to Benjamin after he had repaid Dorothy in full. The agreement, which was dated December

29, 1998, and signed February 6, 1999, provided, in pertinent part:

> Agreement Between Dorothy Elain Whitaker and Benjamin Franklin Whitaker, Jr. regarding, the property, 7953 Lansdale Road, Baltimore County, Maryland 21224 which Benjamin F. Whitaker, Jr. will use as his principle [sic] residence.
>
> I Benjamin Whitaker, Jr. agree to repay Dorothy Whitaker $50,000.00 over a period of thirty years at and [sic] interest rate of 10%. I understand that this will be paid on an amortization schedule. At the completion of payment with interest, the property of Landsdale [sic] shall be deeded to Benjamin F. Whitaker, Jr. or his designee. Benjamin F. Whitaker, Jr. will pay principle [sic] plus interest of 10% and the taxes, which he understands may and usually do increase yearly, and the home insurance as well and the water bill.
>
> Payment is expected by the first (1st) day of each month and not to be received later than the fifth (5th) day of the month. If the payment is later than the fifth (5th) day of the month, a $30.00 late fee will be charged.
>
> This agreement is to protect both parties, Benjamin F. Whitaker, Jr. and Dorothy Whitaker in the event of the death of either. Benjamin F. Whitaker, Jr. made an initial payment of $5,000.00 towards the above property on October 29, 1998. Because the payment went toward the purchase of the house, and not to Dorothy Whitaker, this letter of agreement, and not a receipt, is verification of the initial payment. . . .
>
> . . . If the agreement is not fulfilled by Benjamin F. Whitaker, Jr . . . . the property will be sold by Dorothy Whitaker, with the objectives being in the order listed 1) to recoup any balance of the $50,000.00 not paid, 2) to recoup any interest lost over the periods which no payment(s) was/were made, 3) to recoup any legal cost incurred, 4) to cover cost involved in sale and settlement (if the property

must be sold) and 5) to cover repair cost, for lack of home maintenance/vandalism.

The agreement was never recorded.

Benjamin made monthly payments to Dorothy from early 1999 until July of 2002, in the aggregate amount of $20,100. During that time period, there were occasional disputes between Dorothy and Benjamin regarding the timeliness of payments and maintenance of the property. Dorothy received a number of zoning code citations as a consequence of Benjamin's use of the property. On three occasions, Dorothy filed rent actions against Benjamin in the District Court to collect past due monthly installments.

By letter dated November 25, 2002, counsel for Benjamin advised Dorothy that it was Benjamin's position that the Loan Repayment Agreement was a land installment contract within the scope of RP § 10–101(b); that Dorothy had failed to comply with a number of the requirements of RP § 10–102; and that, as a consequence of that non-compliance, Benjamin was exercising his statutory right to cancel the contract and requesting a refund of all monies he had paid on account of the property.

On July 28, 2003, Dorothy filed suit against Benjamin in the Circuit Court for Baltimore County, seeking enforcement of the Loan Repayment Agreement and other relief. Benjamin responded with a counterclaim, asserting his right to cancel the contract, and seeking a judgment in the amount of the refund to which he claimed entitlement.

When the case was heard on the merits, the trial judge first considered whether the transaction between Dorothy and Benjamin met the definition of a land installment contract such that it was subject to RP § 10–101 *et seq.* The trial judge concluded that the transaction was not within the scope of the statute, and ruled from the bench:

> [T]his loan repayment agreement is not a land installment contract within the meaning of Section 10–101 et se[q]. in the [R]eal [P]roperty code, nor does it comply with the provisions set forth in Section 10–103.

I find that it is more in the nature of a promissory note, and it is not a mortgage or deed of trust, that it is not a two-party agreement between Mr. Whitaker and Mrs. Whitaker, but it is a three-party agreement in that Phoenix Homes[, the party from which Dorothy purchased the property,] was the owner of the property.

The statute refers to the vendee to a vendor and a purchaser. Furthermore, there is no language in the loan repayment agreement indicating a sale and purchase as required by Section 10–101 et se[q]. It relates entirely to the repayment of a loan and not a sale.

... I indicated at the outset that certain of the items required in a land installment contract are required by Section 10–103[;] some of those items are contained in the loan repayment agreement, but others are not. Specifically, there is no provision that the vendee has the right to accelerate any installment payment.

There's no 12–point bold type as required by Section 10–103[ (a)(7) ], and there [are] other deficiencies and noncompliance with the conditions set forth in Section 10–103.... I accept that this is not a land installment contract, but simply a loan repayment agreement executed between Ms. Whitaker and Mr. Whitaker.

Having ruled that the Loan Repayment Agreement was not a land installment that gave Benjamin a right to cancel, the trial judge entered an order for the sale of the property pursuant to the Loan Repayment Agreement, with the net proceeds to be paid to Benjamin after paying Dorothy the principal and interest remaining due on her $50,000 purchase money advance, as well as the costs of sale and repairs. Benjamin appealed, and argues that the trial court erred in ruling that the Loan Repayment Agreement was not a land installment contract. Dorothy filed a cross appeal, and argues that the trial court should have allowed her to recover all counsel fees she incurred in the enforcement of the agreement. Because we agree with Benjamin that the trial court should have permitted Benjamin to cancel the agreement

pursuant to RP § 10–102(f), we need not reach the issue raised by Dorothy's cross appeal.

## Legal Analysis

██ RP § 10–101(b) gives the following definition of the agreements that are subject to the statutory regulations imposed by RP Title 10, Subtitle 1:

"Land installment contract" means a legally binding executory agreement under which:

(1) the vendor agrees to sell an interest in property to the purchaser and the purchaser agrees to pay the purchase price in five or more subsequent payments exclusive of the down payment, if any; and

(2) the vendor retains title as security for the purchaser's obligation.

The arrangement between Dorothy and Benjamin falls within the scope of this definition. Having purchased the subject property in her own name on October 30, 1998, Dorothy agreed with Benjamin that if he paid her $50,000, amortized over 30 years with monthly payments of principal and interest at the rate of 10%, she would, upon being paid in full, convey the property to Benjamin. Except for the operation of RP § 10–101 *et seq.*, this was a legally binding executory agreement pursuant to which Dorothy committed to sell the subject property to Benjamin for $50,000, payable in more than five subsequent payments (exclusive of the down payment), with Dorothy retaining title to the property in her name as security until payment in full.

The trial judge observed that RP § 10–103 states that "[e]very land installment contract shall contain all of the following information . . . ," and then lists a number of items that are required to be included in a land installment contract. We agree with the trial judge that the Loan Repayment Agreement did not include all of the information that the legislature has prescribed for inclusion. It does not follow, however, that, if a land installment contract meets the definition set forth in RP § 10–101(b), a vendor can, by simply

failing to comply with the requirements of RP § 10–103, avoid the remedies the legislature has provided for the benefit of purchasers in the balance of the subtitle. Such a loophole in the coverage of the statute would make the statutory protection for purchasers illusory. *Cf. Spruell v. Blythe,* 215 Md. 117, 119, 137 A.2d 183 (1957) (purchaser entitled to statutory remedies even though there never was any written contract as required by the Land Instalment Contract Act); *Collins v. Morris,* 122 Md.App. 764, 782, 716 A.2d 384 (1998) (purchaser entitled to relief pursuant to RP § 10–102(d) even though contract was not in writing). *See also Szaleski v. Goodman,* 260 Md. 24, 28, 271 A.2d 524 (1970) (a contract that is unenforceable for vagueness does not entitle the purchaser to seek statutory remedies applicable to land installment contracts); *Hudson v. Maryland State Housing Company,* 207 Md. 320, 325, 114 A.2d 421 (1955) (Land Instalment Contract Act applicable even though contract did not include required disclosure regarding insurance).

Because the agreement between Dorothy and Benjamin was a land installment contract, Dorothy, as vendor of the property, was obligated to comply with RP § 10–102, which, among other things, requires the seller to record the contract within 15 days after the agreement is signed. RP § 10–102(f) states:

(f) Within 15 days after the contract is signed by both the vendor and purchaser, the vendor shall cause the contract to be recorded among the land records of the county where the property lies and shall mail the recorder's receipt to the purchaser. This duty of recordation and mailing of receipt shall be written clearly or printed on the contract. Failure to do so, or to record as required under this section within the time stipulated, gives the purchaser the unconditional right to cancel the contract and to receive immediate refund of all payments and deposits made on account of or in contemplation of the contract, if the purchaser exercises the right to cancel before the vendor records the contract.

It is undisputed that Dorothy never recorded the agreement among the land records of Baltimore County. As a consequence, Benjamin had the "unconditional right to cancel the

contract" at any time. As the Court of Appeals noted in *D & Y, Inc., v. Winston,* 320 Md. 534, 538, 578 A.2d 1177 (1990): "[T]he legislature intended to give the purchaser the right to cancel the contract and recover all payments if recording is not accomplished within the specified 15 days, provided that the election is made and communicated before recording is actually accomplished." Benjamin did cancel the contract by sending counsel's letter dated November 25, 2002. Having cancelled, Benjamin was entitled to an immediate refund of all payments made "on account . . . of the contract."

Referring to a previous incarnation of the same statutory provision in *Spruell v. Blythe, supra,* 215 Md. at 123–24, 137 A.2d 183, the Court of Appeals noted: "This sub-section makes no provision whatever for an allowance to the seller of an amount equivalent to the reasonable rental value of the property during the period of the purchaser's occupancy. It provides in sweeping and all inclusive terms for the return of *all* deposits and payments for complete non-compliance with the statute, and it makes no exceptions." This Court has reaffirmed that interpretation as recently as 1998 in *Collins v. Morris, supra,* 122 Md.App. at 772, 716 A.2d 384 (purchaser entitled to a refund of all payments made "without an offset for the fair rental value of the property during [purchaser's] occupancy").

Dorothy argues that Benjamin's refund should be limited to payments of principal, and that she should be permitted to retain the payments attributable to interest. We reject that contention. In *Spruell v. Blythe, supra,* 215 Md. at 124, 137 A.2d 183, the Court of Appeals noted that the legislature had used "the uncompromising (word) 'all' " in reference to the payments a purchaser is entitled to recover following cancellation. We view the reference in RP § 10–102(f) to the "refund of all payments and deposits made on account of . . . the contract" to include any payments to seller, whether principal or interest.

Dorothy's reliance upon our decision in *Sidhu v. Shigo* is misplaced. In *Sidhu v. Shigo,* 61 Md.App. 61, 69, 484 A.2d

1033 (1984), *cert. denied,* 302 Md. 682, 490 A.2d 719 (1985), we held that, for the purpose of determining whether the contract in question calls for more than five installment payments of the purchase price, payments of "interest only" are not counted as installments. That holding does not support Dorothy's argument that the refund which a cancelling purchaser may receive under RP § 10–102(f) is limited to payments attributable to reduction of principal only. As the Court of Appeals made plain in *Spruell,* the statute entitles the purchaser to receive a refund of *all* payments and deposits made on account of the contract.

Benjamin is therefore entitled to a judgment in the amount of all monies he paid on account of his contract with Dorothy. Benjamin acknowledges, however, that he continued to occupy Dorothy's property even after his counsel gave notice of cancellation on November 25, 2002. Benjamin concedes that Dorothy is entitled to a set-off for the fair rental value of the property during the period from November 25, 2002, until the time Benjamin vacated the property on December 16, 2003. Dorothy contends that Benjamin did not give her any notice that he vacated the property and had not returned possession of the property to Dorothy even as of the date of trial (*i.e.,* April 7, 2004). The trial judge did not make any ruling as to the period during which Benjamin should compensate Dorothy for his post-cancellation occupancy. On remand, the court shall determine the total amount of refund Benjamin is entitled to receive pursuant to RP § 10–102(f)— *i.e.,* a "refund of all payments and deposits made on account of or in contemplation of the contract"—and the proper set-off to which Dorothy is entitled for the fair rental value of the property during such period of time that the court determines Benjamin continued to retain possession of the property after giving notice of cancellation on November 25, 2002.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEE.**